DECIDED FEBRUARY 22, 1940. REHEARING DENIED MARCH 23, 1940.

*John L. Tison, Forest C. Oates Jr.,* for plaintiff.
*J. A. Wright, Henry A. Stewart,* for defendant.

27880. INGRAM *et al. v.* SMITH.

336

*Claude Christopher, Morgan S. Cantey, W. B. Mitchell,* for plaintiffs.

*W. J. Wallace,* for defendant.

MacIntyre, J. This is the second appearance of this case in this court. The judgment at the former hearing is reported in *Ingram v. Smith,* 57 *Ga. App.* 438 (195 S. E. 882). This is an action brought by O. W. Ingram and O. B. Ingram against E. H. Smith, to recover $450 for 620 trees alleged to have been cut by the defendant from the land of the plaintiffs. On the second trial of the case the defendant offered an amendment to his answer which was allowed over objection by plaintiffs. The plaintiffs excepted pendente lite to that ruling. A verdict in favor of the defendant was rendered. A motion for new trial was overruled, and the plaintiffs excepted.

■ The defendant moved to dismiss the exceptions pendente lite, on the ground that the "purported [bill of] exceptions pendente lite fails to show affirmatively [that it], was presented to the trial judge in time provided by law, and that the same was signed by the judge and filed [with the clerk] in time." The Code, § 6-905, declares: "Exceptions tendered before the final judgment, for the mere purpose of being made a part of the record, shall be certified to be true by the judge, and ordered to be placed on the record. Such exceptions shall be tendered during the term. If, however, the court shall adjourn within less than 30 days from the date of the ruling complained of, such bills of exceptions pendente lite shall be tendered within 60 days from the date of the order, decision, or ruling complained of." The final bill of exceptions certifies that the ruling complained of in the exceptions pendente lite was made on March 20, 1939, during the regular term of Crawford superior court, and the exceptions pendente lite were dated May 15, 1939, certified as true by the judge on May 16, 1939, and filed in the office of the clerk on May 20, 1939. It is further certified in the final bill of exceptions on the final writ of error that "the bill of exceptions pendente lite, and the ruling and judgment of the court allowing said amendment were duly certified

and made a part of the record in this case by order of the court dated the 15th day of May, 1939, and the same was filed on the 20th day of May, 1939, in the office of the clerk of the superior court of Crawford County." The judge certified that this was true. We think this statement in the final bill of exceptions, properly construed, affirmatively shows that the exceptions pendente lite were filed within the time required by law. The word "duly," in the connection in which it is used in the final bill of exceptions, properly construed, includes within its meaning "in due time" or "in proper manner." *Central of Georgia Railway Co.* v. *Haden,* 22 *Ga. App.* 589 (96 S. E. 502); *Pinson* v. *State,* 184 *Ga.* 333, 335 (191 S. E. 95); *Smith* v. *Satilla Pecan &c. Co.,* 152 *Ga.* 538 (7) (110 S. E. 303); 19 C. J. 833; Black's Law Dictionary. The motion to dismiss the exceptions pendente lite is overruled.

■ The Code, § 105-2013, provides: "Where plaintiff recovers for timber cut and carried away, the measure of damages is: 1. Where defendant is a wilful trespasser, the full value of the property at the time and place of demand or suit, without deduction for his labor or expense. 2. Where defendant is an unintentional or innocent trespasser, or innocent purchaser from such trespasser, the value at the time of conversion, less the value he or his vendor added to the property." Under this section of the Code there is one rule applicable in determining the measure of damages where the defendant is a wilful trespasser and a different rule applicable where he is an unintentional or innocent trespasser, or an innocent purchaser from such trespasser. In the instant case one of the allegations is that the amendment to the defendant's original answer set up facts which would have brought him under paragraph 2 of Code, § 105-2013, quoted above. This part of the amendment to the answer, as against general demurrer, was properly pleaded as a defense. The demurrer was general, and was properly overruled even though the amendment to the defendant's answer contained objectionable matter, for part of the amendment was properly pleaded and unobjectionable. An omnibus attack on the amendment was properly overruled where it contained both objectionable and unobjectionable matter, for the part that was objectionable should have been particularly pointed out. *Douglas, Augusta & Gulf Railway Co.* v. *Swindle,* 2 *Ga. App.* 550, 556 (59 S. E. 600); *Mendel* v. *Converse,* 30 *Ga. App.* 549, 552 (118 S. E. 586).

■ On January 3, 1911, Judge A. J. Zellner, deeded a certain tract of land containing 300 acres (not more or less) to R. L. Rogers and D. M. Ellen and described the land as follows: "All that tract or parcel of land lying and being in the County of Monroe, and said State of Georgia. 300 acres of land in Cox's District. Beginning at a point directly in front of the residence formerly occupied by A. J. Zellner, said point being in the center of the road; thence east 19.15 chains; thence south 45 chains; thence west 54.15 chains; thence north 10 chains; thence west 9 chains; thence north 35 chains; thence east 29 chains; thence north 16 chains; thence east 15 chains; thence south 16 chains to the beginning point. Said lands are bounded on the north by Feagin Zellner and Mrs. C. J. Turner; south and east by lands of A. J. Zellner, and Mrs. M. J. Hugey's children." In the body of the deed there was the following plat which corresponded exactly with the above description:

The plaintiffs contend that line A is the eastern boundary and that line X is the southern boundary. The defendant contends that line B is the eastern boundary and that line Y is the southern boundary.

On January 4, 1918, R. L. Rogers and D. M. Ellen sold the same 300 acres to the plaintiffs, and the deed to the plaintiffs contained the same description exactly as was used in the deed from Zellner to Rogers and Ellen, except that it did not contain the plat

referred to in that deed. At the time of the sale by A. J. Zellner to Rogers and Ellen, A. J. Zellner owned the land on the east and south of the tract sold to Rogers and Ellen. After the sale to Rogers and Ellen, A. J. Zellner sold the land located to the south and east of the tract which Zellner had sold to Rogers and Ellen, and which the plaintiffs now own, to another person who sold to the present owner, Willingham. Willingham, now owner of the tract to the south and east of the plaintiffs' land, sold the timber on his land to the defendant. The plaintiffs contend that the defendant has cut certain trees on their land which were located west of their east line and north of their south line.

R. O. Zellner, a son of Judge A. J. Zellner, the common grantor of both the plaintiffs and Willingham (the man from whom the defendant bought the timber rights), testified that the original starting point in the description of the land which the plantiffs now own was at a point in front of his father's old home where two roads intersected, and that this starting point was the corner of four lots of land and could be easily located. All the parties were in agreement that the southeast corner of the plaintiffs' tract was not in dispute and was marked by an iron stake. It seems to us that under the plaintiffs' deed and the deed from A. J. Zellner to Rogers and Ellen it should have been a simple matter to establish the northeast corner by merely running a line north 45 chains. At the end of this line would be the northeast corner. Then, the correctness of this corner could be checked by going to the starting point in the deed, which was located at the intersection of the two roads which was the corner of four land lots, and from there measuring east 19.15 chains, and if this brought one to a point 45 chains north of the southeast corner, it would be a verification of the correctness of the location of the northeast corner. Then, of course, a straight line between the southeast and the northeast corners would be the correct east line of the plaintiffs' tract of land.

The defendant contends that the northeast corner of the plaintiffs' tract is at a point 10.61 chains east of the starting point named in the deed, instead of 19.15 chains east of said starting point, and that the east line of the plaintiffs' tract is a straight line from said point 10.61 chains east of said starting point to the southeast corner, which corner is not in dispute. The defendant further contends that this east line was correct and was agreed upon

by A. J. Zellner, the original common grantor, and Rogers and Ellen, predecessors in title to the plaintiffs, at the time they purchased the said tract of land. The only proof the defendant had that the northeast corner of the plaintiffs' tract is 10.61 chains east of the starting point instead of 19.15 chains east, as stipulated in the deed, was the testimony of an old negro, Jerry Zellner, who testified that about a year before the deed from A. J. Zellner to Rogers and Ellen was executed Rogers set out a crape-myrtle bush and drove down an iron stake at a point 10.61 chains east of said starting point, and said it was the northeast corner of the tract, and then went down and drove an iron stake on the southeast corner which has never been in dispute. However, it should be noted that the crape-myrtle bush and stake which the defendant contends is the northeast corner of the plaintiffs' tract are only 10.61 chains east of the starting point, whereas the deed calls for the northeast corner at a point 19.15 chains east of said starting point. It seems that about a year before the time the deed from A. J. Zellner to Rogers and Ellen was executed and dated, A. J. Zellner had executed a bond for title to Rogers and Ellen and a man by the name of Stokes.

The plaintiffs and Willingham, in order to locate the eastern and southern boundary lines of the plaintiffs' tract of land, which of course was the western and northern boundary lines of the Willingham tract, and which they could not agree on, got a Mr. Goodrum to run these lines; but they were not satisfied with that and they then got a Mr. Carr of Crawford County and "he was about to kick out some of Mr. Willingham's lines and we abandoned that. Mr. Carr went considerably below where Mr. Shi went." Mr. Shi was the surveyor who was subsequently agreed on by the plaintiffs and Willingham, and who made the plat which the plaintiffs introduced in evidence in this case, which plat they contended shows the east and southern boundary lines. According to the testimony of Mr. Willingham, "Mr. Ingram said to me, 'How will we locate these lines?' And I said, 'I do not see any way to do it except to have it processioned, unless we can just get a competent surveyor to come here and run it.'" After inquiry and investigation they agreed on Mr. Shi, who was a graduate of Alabama Polytechnic Institute, Auburn, Alabama, and who had had considerable experience in running land lines, and each of them paid one half of the ex-

pense of running these lines of the plaintiffs' tract. Mr. Shi testified that he ran the eastern and southern boundary lines in question according to the plat and description in the deed from A. J. Zellner to Rogers and Ellen, and made a plat for the parties which was introduced in evidence.

The plaintiffs contend that the eastern and southern boundary lines that were run by Mr. Shi are correct. After the plaintiffs told the defendant that he had cut timber on their land and asked him to pay therefor, the defendant, with no notice to the plaintiffs, had another surveyor run the eastern line, and said surveyor ran a straight line between the southeast and northeast corners pointed out by the old negro Jerry Zellner, and then ran the south line straight between the southeast and southwest corners as placed at the time the bond for title was given, although the deed from A. J. Zellner to Rogers and Ellen showed a considerable "jog" in the south line. Neither of these lines run by the defendant's surveyor (and so stated by him) corresponded with the plat in the deed from A. J. Zellner to Rogers and Ellen, or with the plat drawn by Mr. Shi and introduced in evidence. In addition to the above statement of facts, we might say that all the facts recited in *Ingram* v. *Smith,* supra, when this case was formerly before this court, appeared also in the evidence on the second trial of the case which is now here for review, and reference is here made to the statement of facts there recited.

It seems to us that if we concede that the old negro Jerry Zellner was correct in his statement that it was in 1910 when he went around the lines with Rogers and the corners were marked, the subsequent deed not having been made until 1911, these corners and lines must have been made relative to the bond for title, which did not describe the land by metes and bounds but merely bounded it on all of its sides by naming the adjacent landowners, yet, when A. J. Zellner subsequently made the deed to Rogers and Ellen, about a year after the bond for title, he not only described the land in the deed in the very inaccurate and general way in which he had described it in the bond for title, but added a more particular description by giving the directions and distances of each of the lines (by metes and bounds), and even went further than this and put in the body of the deed a map showing the metes and bounds and the directions and distances. Indeed, it is difficult for us to

understand how a description in a deed could be more accurate than the description given in the deed in the instant case. If a competent surveyor could not locate the eastern and southern lines by the description in the deed from Zellner to Rogers and Ellen, where the southeast corner, which was not in dispute, was pointed out to him, it is difficult for us to see how a surveyor could ever locate a line from a plat.

A bond for title is but an agreement to make title in the future, an executory or incomplete sale, which is sometimes called a "bond for a deed." 1 Pope's Legal Definitions, 169. The subsequent deed states the sale as it was executed or finally completed. Where such a "bond for a deed" describes the land in a very general and indefinite manner by bounding it by the lands of the adjacent landowners, and the deed is subsequently executed and repeats the description given in the "bond for a deed," and then more particularly describes the tract by metes and bounds, giving definite directions and distances, the agreement in the bond for title, or an oral agreement, as to where, according to the description in the bond, the dividing line between the two properties is located, being merely a preliminary and incomplete agreement, is merged into the final or completed agreement in the deed. The rights of the parties are based alone on the description in the deed. Even if before the time of the making of the deed the parties put the iron stakes on the corners of the tract of land in question, where they thought they would conform to the bond for title, no matter what the agreement was as to the location of the corners and where the dividing lines between the two tracts of land were to be, the inaccurate description in the bond, which was but a preliminary agreement, was merged into the accurate description in the subsequent deed which evidenced the finally executed sale. The bond for title became functus officio when the deed was executed, and the rights of the parties are based alone on the description in the deed. *Taylor* v. *Board of Trustees,* 185 *Ga.* 61 (194 S. E. 169). Especially is this true as to a subsequent purchaser without notice of such agreement in the bond for title·who takes a deed with no description except that appearing in the deed. *Miller* v. *McGlaun,* 63 *Ga.* 435.

Applying the principles above stated to the evidence, we think that the evidence not only demanded a finding that the defendant crossed over the plaintiffs' eastern line but that he also crossed over

their southern line, and cut and converted to his own use some of the plaintiffs' trees; and that the measure of the plaintiffs' damages should have been governed according to whether the jury found the defendant was a wilful trespasser or an unintentional or innocent trespasser. Code, § 105-2013 (1, 2).

Judgment reversed. Broyles, C. J., and Guerry, J., concur.