## 48945. BLACKMON v. SCREVEN COUNTY INDUSTRIAL DEVELOPMENT AUTHORITY.

HALL, Presiding Judge.

The State of Georgia appeals with a certificate from adverse rulings on summary judgment motions made by both parties in appellee's claim under Code Ann. § 92-3403a (C) (2) (n) for a sales tax refund on the purchase of certain climate control equipment for appellee's synthetic yarn manufacturing plant. The equipment consists of duct systems inside the plant, chilling equipment, and an outside cooling tower.

The plant processes different types of fibers in different areas; some of the operations are carding, spinning and twisting; the climate control equipment controls air temperature and relative humidity in the area of these manufacturing operations, maintaining

different conditions in different zones which are not separated by walls. This climate control prevents certain fibers from frizzing, curling, or becoming wet. Apparently, processing synthetic fibers without such equipment borders on the impossible in some locales, depending on the condition of the natural air supply. This equipment was not installed for employee comfort.

The only question presented is one of law, being whether this equipment is "used directly" in manufacture within the meaning of the statute (Code Ann. § 92-3403a (C) (2) (n)), and the parties agree that the only pertinent Georgia authorities are *Hawes v. Custom Canners,* 121 Ga. App. 203 (173 SE2d 400), and *State of Ga. v. Cherokee Brick &c. Co.,* 89 Ga. App. 235 (79 SE2d 322).

The climate control equipment modifies the temperature and humidity of the air in the various manufacturing areas, to create in or on the synthetic fibers a degree of moisture favorable to smooth handling in the manufacturing process. This is somewhat analogous to the industrial gas used by plaintiff in *Cherokee Brick &c. Co.,* supra, the purpose of which was to generate heat to produce physical or chemical changes in the raw material in order to produce the finished brick and clay products. This court held this gas was taxable because not "used directly" in the manufacturing process under the predecessor to this statute, and also cited approvingly Phillips & Buttorff Mfg. Co. v. Carson, 188 Tenn. 132 (217 SW2d 1) holding that coal and fuel oil used to heat and maintain enameling solutions at uniform temperatures was not used directly in manufacturing. Similarly, in *Custom Canners,* supra, two steam generators or boilers were held not to be "used directly" in manufacture under the statute when the steam was circulated through coils in water, to heat the water, which was sprayed on cans in a canning operation for the purpose of bringing them to a determined temperature.

Thus, though Georgia authority on this question is admittedly scant, it appears that devices which are used to heat the materials in the manufacturing process are not "used directly" in manufacturing even though essential to manufacture. From this we conclude that

devices used to affect the environment of the goods in manufacture are not "used directly" in manufacturing. As this court stated in *Custom Canners,* " 'the test is not whether the property is essential to the operation of the plant, but whether it is an actual part of the process of manufacture.' " 121 Ga. App. 203, 205.

We cannot agree with appellee's argument that the proper test under *Custom Canners* is whether the substance generated by the machinery touched or directly affected the product. To the contrary, one test for "direct use" in manufacture is the absence of such an intervening agency. See *Cherokee Brick &c. Co.,* 89 Ga. App. 235, 244 (on motion for rehearing); Ohio Stove Co. v. Bowers, 171 Ohio St. 484 (172 NE2d 295). The equipment here in question fails this test as well. It has nothing to do with the materials in manufacture; it operates solely on the air which then, as an intervening agency, circulates around the carpet yarn.

We conclude that the climate control equipment, though essential to the manufacturing operation, is designed to control the environment of the goods, and as such falls under the rule of the *Custom Canners* and *Cherokee Brick &c. Co.* cases discussed above. The trial court erred in its ruling, and in applying the test of essentiality, as the same was expressly rejected in *Custom Canners,* 121 Ga. App. 203, 205.

The decision reached here is further supported by the general proposition that in interpreting tax exemptions all doubts must be resolved in favor of the taxing authority. *Cherokee Brick &c. Co. v. Redwine,* 209 Ga. 691 (75 SE2d 550); *Oxford v. J. D. Jewell, Inc.,* 215 Ga. 616, 619 (112 SE2d 601).

*The trial court's order of October 5, 1973 is reversed both in its grant of summary judgment for appellee and in its denial of summary judgment for appellant. Deen and Stolz, JJ., concur.*

ARGUED JANUARY 17, 1974 — DECIDED MARCH 13, 1974.

*Arthur K. Bolton, Attorney General, Richard L. Chambers, H. Perry Michael, Gary B. Andrews, Assistant*

*Attorneys General, David A. Runnion, Deputy Assistant Attorney General,* for appellant.

*Stophel, Caldwell & Heggie, R. Wayne Peters, Hollingsworth & Hollingsworth, Harold W. Hollingsworth,* for appellee.