### 75728. MURRAY BAKERY PRODUCTS, INC. v. BOARD OF TAX ASSESSORS OF RICHMOND COUNTY.
(367 SE2d 852)

McMURRAY, Presiding Judge.

In this case of first impression, we are called upon to decide whether certain inventory of a taxpayer is exempt from taxation pursuant to the freeport exemption. OCGA § 48-5-48.2. The superior court determined that the inventory was not exempt.

The taxpayer, Murray Bakery Products, Inc., manufactures cookies in Richmond County. In 1986 the taxpayer filed an inventory tax return seeking an exemption with regard to inventory which was designated by the taxpayer as finished goods, raw materials, packaging materials and general stores. An exemption was allowed only for the inventory which the taxpayer designated as finished goods and raw materials. The taxpayer claims that the other inventory items (which are the subject of this case) are also exempt from taxation. These items are used to package and merchandise the taxpayer's cookies. They consist of plastic trays, cellophane wrappers, caddies, cartons, cases, tapes, labels and liners. *Held*:

It is axiomatic that laws granting an exemption from taxation must be construed strictly in favor of the taxing authority. *Rayle Elec. Membership Corp. v. Cook*, 195 Ga. 734, 735 (2) (25 SE2d 574); *Chilivis v. Cleveland Elec. Co.*, 142 Ga. App. 751, 752 (1) (236 SE2d 872). All doubts must be resolved against the taxpayer. *Blackmon v. Screven County Indus. Dev. Auth.*, 131 Ga. App. 265, 267 (205 SE2d 497). Thus, an exemption will not be allowed unless it was clearly and distinctly intended by the legislature. *Chilivis v. Marble Prods. Co.*, 135 Ga. App. 187 (1) (217 SE2d 441).

Under OCGA § 48-5-48.2 certain inventory may be exempt from tangible personal property taxation. Subsection (1) permits the following exemption: "Inventory of goods in the process of manufacture or production which shall include all partly finished goods and raw materials held for direct use or consumption in the ordinary course of the taxpayer's manufacturing or production business , . ." The taxpayer contends that its packaging materials are "raw materials" which are exempt under the statute. We cannot accept this contention. OCGA § 48-5-48.2 defines "raw materials" as "any material whether crude or processed that can be converted by manufacture, processing, or combination into a new and useful product . . ." In our view, the packaging materials are not "raw materials." They are not

converted by the taxpayer into a "new and useful product." They merely aid the taxpayer in its marketing and distribution efforts. After all, the taxpayer produces cookies. Its raw materials are, therefore, flour, sugar and like items which are converted into cookies. Simply put, the packaging materials in question are not so converted.

The taxpayer asserts that it manufactures *packaged cookies*, not just cookies, and that, therefore, the packaging materials are a part of the taxpayer's product. Assuming, arguendo, the taxpayer's product is packaged cookies, we nevertheless fail to see how the packaging materials fit within the freeport exemption. In part, OCGA § 48-5-48.2 (1) provides: "The exemption provided for herein shall apply only to tangible personal property which is substantially modified, altered or changed in the ordinary course of the taxpayer's manufacturing, processing or production operations . . ." The packaging materials used by the taxpayer are not substantially changed in the production process. These packaging materials remain virtually unchanged after the taxpayer's cookies are packaged.

The superior court did not err in holding that the inventory in question was not exempt from taxation pursuant to the freeport exemption.

*Judgment affirmed. Birdsong, C. J., Banke, P. J., Carley, Sognier and Pope, JJ., concur. Deen, P. J., Benham and Beasley, JJ., dissent.*

BEASLEY, Judge, dissenting.

To this case of statutory construction we must apply the rules governing such a task. Three of them, which deal with the construction of tax exemptions, are applied by the court. Several critical and even more fundamental ones, however, are left out. When they, too, are considered, the result is otherwise.

OCGA § 1-3-1 provides:

"(a) In all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy. . . .

"(b) In all interpretations of statutes, the ordinary signification shall be applied to all words, except words of art or words connected with a particular trade or subject matter, which shall have the significance attached to them by experts in such trade or with reference to such subject matter."

The state constitution permits local governing authorities, subject to approval of the electors, to exempt from ad valorem taxation "inventories of goods in the process of manufacture or production, and inventories of finished goods." Ga. Const. 1983, Art. VII, Sec. II, Par. III (a) (1). The constitution further provides, in section (3) of that subparagraph: "The implementation, administration, and revoca-

tion of the exemptions authorized in this subparagraph (a) shall be provided for by law. Until otherwise provided by law, the grant of the exemption shall be subject to the same conditions, limitations, definitions, and procedures provided for the grant of such exemption in the Constitution of 1976 on June 30, 1983."

The General Assembly has adopted "conditions, limitations, and definitions" as well as "procedures," in OCGA § 48-5-48.2. It is the "conditions, limitations, and definitions," or perhaps more precisely the "definitions" which are at issue here. Subsection (2) of the statute provides for the exemption of "inventory of finished goods" subject to certain conditions, such as that they be manufactured or produced in Georgia in the ordinary course of the taxpayer's manufacturing or production business, and subject to certain limitations, such as that they be exempt only when held by the original manufacturer or producer and only for a period of twelve months.

Subsection (1) reaches back behind and beyond the inventory of *finished* goods and exempts also the "inventory of goods in the process of manufacture or production." It expressly provides that this includes "all partly finished goods *and* raw materials held for direct use or consumption in the ordinary course" of the business in Georgia. There is a limitation, "to tangible personal property which is substantially modified, altered or changed in the ordinary course of the taxpayer's manufacturing, processing, or production operations in this State." It is noteworthy that throughout, the exemption is not limited to what is manufactured but extends also to what is produced.

Murray's finished goods are boxes of cookies. That is what the consumer buys. He does not simply buy cookies. The evidence is uncontravened that the consumer cannot go to the retail store and buy Murray's cookies from a container or tray and carry them away in a sack provided by the shopkeeper. The "production operations" of this plant embrace packaging as part of the finished product itself. Packaged cookies as such are what is sold, and in today's market, packaging often constitutes a large part of the marketability of the product.

The statute is broad when it defines "finished goods" as "goods, wares, and merchandise of every character and kind." It does list some things which are not included, but the boxed cookies here subject do not fall within any of the categories in the list.

If Murray's "finished goods" are boxed cookies, and its "inventory of finished goods" is the inventory of boxed cookies, which the evidence shows without question, then the inventory of what is "in the process of manufacture or production" must include that physical property which finds its way into the finished product. This is the portion of the statute which covers the plastic trays, cellophane, tape, labels, liners, and so forth, as Murray claims. As a matter of fact, the Board of Tax Equalization had itself exempted plastic trays and cel-

lophane wrappers the year before.

Some of the items may be classified as "partly finished goods" in the process of production, and some fall more readily into the classification of "raw materials" as this term is defined in the statute, because they are processed materials which can be converted by combination into a new and useful product. For example, plastic trays by themselves would not interest the consumer who desires fresh cookies in a form which will protect them from breaking and soiling until used. It is the plastic tray and the cookies and the other trappings which are combined into the finished goods which the consumer buys.

This exemption, which the statute itself expressly states is "commonly known as the freeport exemption," has as its purpose the promotion and encouragement of the locating of new businesses within counties whose electorates desire such. With this in mind, and applying the plain language principle of statutory construction, it must be concluded that the General Assembly intended to exempt the packaging ingredients of the business' product when they constitute an integral and necessary part of the finished goods.

I am authorized to state that Presiding Judge Deen and Judge Benham join in this dissent.

DECIDED MARCH 15, 1988 —
REHEARING DENIED MARCH 28, 1988 —

*Paul K. Plunkett*, for appellant.
*Robert C. Daniel, Jr.*, for appellee.