A98A0787. BOARD OF ASSESSORS OF JEFFERSON COUNTY
v. McCOY GRAIN EXCHANGE, INC.
(505 SE2d 832)

SMITH, Judge.

This appeal involves the construction of OCGA § 48-5-48.2, which governs the freeport exemption from ad valorem taxation. McCoy Grain Exchange, Inc., the taxpayer, applied to the Board of

Assessors of Jefferson County for such an exemption for the farm products stored on its property in its grain merchandising and storage business. The board of assessors denied the exemption, as did the board of equalization. The taxpayer then appealed to the Superior Court of Jefferson County, which reversed the decision of the board of equalization and granted the exemption. This appeal by the board of assessors ensued. Because we conclude that the trial court erroneously construed the statute governing the exemption and that the version of the statute governing the exemption for the tax years involved here did not contemplate its application to this grain storage business, we reverse the judgment below.

The statute in effect at the time the exemption was sought and denied provided that the freeport exemption may be granted to certain types of tangible personal property, including "[i]nventory of goods in the process of manufacture or production which shall include all partly finished goods and raw materials held for direct use or consumption in the ordinary course of the taxpayer's manufacturing or production business in the State of Georgia. The exemption provided for herein shall apply only to tangible personal property which is substantially modified, altered or changed in the ordinary course of the taxpayer's manufacturing, processing or production operations in this State." Former OCGA § 48-5-48.2 (1).

McCoy Grain Exchange is in the business of merchandising and storing grain. It purchases raw farm products, including grain, corn, and soybeans, from farmers. These are stored in McCoy's elevators until sold to mills that convert the raw materials to products such as flour and animal feed. While the farm products are in McCoy's facilities, they are aerated to prevent mold and treated with certain chemicals to deter insect infestation. It is undisputed, however, that McCoy does not convert or manufacture the raw farm products into other products.

McCoy nevertheless contends that its aeration and chemical treatment of the farm products brought its inventory within the purview of OCGA § 48-5-48.2 (1) because, without those treatments, the products would have been destroyed by mold or insects, and the products therefore were transformed by those treatments from something essentially worthless into products capable of being further processed. It argues that the treatments applied at its facility therefore "substantially modified, altered or changed" the inventory, making it eligible for freeport exemption. We do not agree.

We note initially that the Georgia General Assembly amended OCGA § 48-5-48.2 in 1998, adding a sentence to the language quoted above, now codified as subsection (b) (1). The language added in 1998 provides: "For purposes of this paragraph, the cleaning, drying, pest control treatment, or segregation by grade of grain, peanuts, or other

oil seeds, or cotton shall constitute substantial modification in the course of processing or production operations." Had this amendment been in effect at the times relevant to this action, we would certainly agree that McCoy was entitled to the exemption. But it was not. The amendment in issue became effective July 1, 1998.

It is well established that laws granting exemption from taxation must be construed strictly in favor of the taxing authority. *Murray Bakery Products v. Bd. of Tax Assessors of Richmond County*, 186 Ga. App. 559 (367 SE2d 852), aff'd, 258 Ga. 484 (371 SE2d 393) (1988). No exemption will be allowed unless it was intended by the legislature. *Murray Bakery Products*, supra, 186 Ga. App. at 559. We must ascertain, therefore, whether the legislature intended, prior to the 1998 amendment, that "cleaning, drying, pest control treatment, or segregation by grade of grain, peanuts, or other oil seeds, or cotton" should be considered a "substantial modification" entitled to exemption.

Two conflicting principles of statutory construction could be used to determine the legislature's intent. One "provides that, 'unless the contrary manifestly appears from the words employed, the language of a code section should be understood as intending to state the existing law and not to change it. (Cits.)' [Cit.]" *TEC America v. DeKalb County Bd. of Tax Assessors*, 170 Ga. App. 533, 537 (317 SE2d 637) (1984). Although this principle *could* be construed to apply only to an original codification, it could also apply here, suggesting that when the legislature amended OCGA § 48-5-48.2 (b) (1) in 1998, it did not change the law, but merely codified for the first time a clarification of the law as it already existed.

But the second principle is more specific, and we find it prevails here. *JCS Enterprises v. Vanliner Ins.*, 227 Ga. App. 371, 373 (3) (489 SE2d 95) (1997). This principle provides that when a statute is amended, " '[f]rom the addition of words it may be presumed that the legislature intended some change in the existing law.' " *C. W. Matthews Contracting Co. v. Capital Ford Truck Sales*, 149 Ga. App. 354, 356 (254 SE2d 426) (1979). This is further supported by the language in the preamble of the 1998 amendment, which provides that it amended Title 48 "so as to change provisions relating to administration of ad valorem taxation." Ga. L. 1998, p. 1120.

Given the language in the preamble and the addition of previously nonexistent words to the statute, we must presume that the 1998 amendment was intended to change the law. Since the *change* made cleaning and pest control of agricultural products "substantial modifications," it follows that under the prior law they were not. In this case, therefore, the treatments of the agricultural products did not entitle the taxpayer to the freeport exemption under the existing law for the tax years 1994 and 1995, and the trial court erred in

granting the exemption.

*Judgment reversed. Johnson, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED AUGUST 24, 1998.

*Burnside, Wall, Daniel, Ellison & Revell, Harry D. Revell*, for appellant.

*Hutcheson & Wynne, Robert M. Wynne, Spivey, Carlton & Edenfield, J. Franklin Edenfield*, for appellee.

*Thurbert E. Baker, Attorney General, Daniel M. Formby, Deputy Attorney General, Harold D. Melton, Senior Assistant Attorney General, Michele M. Young, Assistant Attorney General*, amici curiae.