In re Bertha Joanna HAGLER, Debtor.

Neil C. Gordon, Trustee, Plaintiff,

v.

U.S. Bank, National Association, as Trustee, on behalf of Holders of the Home Equity Pass–Through Certificates, Series 2006–1, Defendant.

Bankruptcy No. 07–65231.
Adversary No. 07–6456.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Dec. 10, 2009.

J. Thomas Salata, The Law Offices of J. Thomas Salata, Alpharetta, GA, for Debtor.

Michael F. Holbein, Arnall Golden Gregory LLP, Atlanta, GA, for Plaintiff.

Neil C. Gordon, Atlanta, GA, pro se.

J. Ben Vitale, Lewis E. Hassett, Morris, Manning & Martin, L.L.P., Atlanta, GA, for Defendant.

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JAMES E. MASSEY, Bankruptcy Judge.

The primary issues in this adversary proceeding are (1) whether under Georgia law a deed to secure debt that is unattested but nonetheless filed and recorded by a Superior Court clerk provides constructive notice of the grantee's lien to a bona fide purchaser and (2) whether the label "Georgia–Second Mortgage" in a footer on the bottom of the first page of a properly attested security deed excites attention so as to put a bona fide purchaser on a duty of inquiry that would lead to the discovery of an earlier recorded but unattested security deed.

On October 12, 2005, Bertha Joanna Hagler obtained two loans to refinance an existing loan secured by her residence located at 145 Brookeivey Lane, Alpharetta, Georgia (the "Property"). The new loans were secured by two security deeds in favor of Mortgage Electronic Registration Systems, Inc. as nominee for Wilmington Finance, a division of AIG Federal Savings Bank. The first of those security deeds, which was recorded at Deed Book 41309, Page 393, Fulton County Georgia Records, was unattested. The second one to be recorded (in Deed Book 41309, Page 415, Fulton County Georgia Records) was attested by a notary and an unofficial witness. The second security deed was created using a form identified in a footer at the bottom of the first page at the left margin as: "GEORGIA–SECOND MORTGAGE–1/80—FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS," below which in small type are the words "Form 3811 Amended 7/02." Memorandum of Law in Support of Defendant's Motion for Summary Judgment, Doc. No. 28, p. 82.

On November 8, 2005, both deeds were filed with, and recorded and indexed by, the Clerk of the Superior Court of Fulton County, Georgia. Shortly thereafter, Wilmington assigned the two security deeds to U.S. Bank, National Association, as Trustee, on behalf of Holders of the Home Equity Pass–Through Certificates, Series 2006–1. On April 2, 2007, the debtor filed the petition initiating this case under Chapter 7 of the Bankruptcy Code. Neal C. Gordon is the Chapter 7 Trustee. During the course of the case, the Trustee sold the Property free and clear of liens, and

those liens attached to the proceeds of the sale (the "Proceeds").

In the original complaint, Plaintiff named only Wilmington as a defendant. After the assignment of Wilmington's interest to U.S. Bank came to light, Plaintiff amended the complaint to add U.S. Bank as a defendant. Wilmington agreed to a judgment that it had no interest in the Proceeds. U.S. Bank adopted the answer and other documents filed in this proceeding by Wilmington.

## I.

■ Section 544(a)(3) of the Bankruptcy Code grants to a bankruptcy trustee so-called "strong-arm" powers that may enable the trustee to set aside or avoid transfers of the debtor's real property. That section provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—...

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3). State law determines the extent of the powers of a bona fide purchaser of real property. *Butner v. U.S.*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently

simply because an interested party is involved in a bankruptcy proceeding."); *In re Hedrick*, 524 F.3d 1175, 1182 (11th Cir. 2008).

Citing *Higdon v. Gates*, 238 Ga. 105, 231 S.E.2d 345 (1976) and *Coniff v. Hunnicutt*, 157 Ga. 823, 836, 122 S.E. 694 (1924), Plaintiff contends that under Georgia law a security deed that is not attested by an official witness and an unofficial witness cannot provide constructive notice to a subsequent bona fide purchaser because it is not in recordable form. For that reason, Plaintiff asserts, a bona fide purchaser without actual knowledge of the prior interest could have acquired the Property as of the petition date free of any interest of Defendant under the first security deed. He seeks to avoid the transfer of the Property by Debtor to Wilmington and hence to avoid Defendant U.S. Bank's lien against the Proceeds pursuant to section 544(a)(3). He further seeks to preserve the avoided lien for the benefit of the estate pursuant to section 551 of the Bankruptcy Code.

Defendant contends that a 1995 amendment to O.C.G.A. § 44–14–33 changed the law to enable an unattested security deed to provide constructive notice. Alternatively, Defendant argues that the label "Second Mortgage" on the second security deed are words sufficient to excite attention, thereby creating a duty of inquiry, and that a reasonable investigation would lead to the discovery of the first security deed.

Both parties move for summary judgment. Because the material facts are not in dispute, summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## II.A.

In Georgia, before any deed, mortgage, or other recordable instrument may be recorded, "it *must be* attested or acknowledged as provided by law." O.C.G.A. § 44–2–14(a) (emphasis added). Despite these requirements, clerks file unattested or otherwise improperly attested deeds, though presumably not very often.

There are two types of testimonial defects. First, a deed may have a latent defect, meaning that the defect is not apparent on the face of the deed. One example is a deed signed by a person who, otherwise intending to serve as a witness, did not actually observe the grantor execute or acknowledge the deed. Notwithstanding a lack of clarity on this point in a few cases decided prior to 1995, the Georgia Supreme Court held in *Leeds Building Products, Inc. v. Sears Mortgage Corp.*, 267 Ga. 300, 477 S.E.2d 565 (1996) that a security deed with a latent defect provided constructive notice of its existence to a bona fide purchaser.

Second, a deed may have a patent defect, meaning that the defect is obvious and easily detectable. An example is a deed missing the signature of an unofficial witness. Georgia law has long provided that a deed with a patent defect with respect to attestation does not provide constructive notice to a bona fide purchaser. *See, e.g., Donalson v. Thomason*, 137 Ga. 848, 74 S.E. 762 (1912). There is no dispute between the parties that this was the law prior to 1995.

In 1995, § 44–14–33 was amended to read as follows:

> In order to admit a mortgage to record, it must be attested by or acknowledged before an officer as prescribed for the attestation or acknowledgment of deeds of bargain and sale; and, in the case of real property, a mortgage must also be attested or acknowledged by one additional witness. In the absence of fraud, if a mortgage is duly filed, recorded, and indexed on the appropriate county land records, such recordation shall be deemed constructive notice to subsequent bona fide purchasers.

(Ga. Laws 1995, p. 1076). The amendment added the second sentence.

■ O.C.G.A. § 44–14–61 provides that "[i]n order to admit deeds to secure debt or bills of sale to record, they shall be attested or proved in the manner prescribed by law for mortgages."[1]

Defendant's argument that the amendment to § 44–14–33 changed Georgia law with respect to patently defective deeds was raised in *Gordon v. Terrace Mortgage Co. (In re Kim)*, 571 F.3d 1342, 1345 n. 4 (11th Cir.2009), but the Court of Appeals resolved the appeal without addressing the issue. Without question, the amendment clarified the pre-amendment law that a deed having a latent defect with respect to attestation nonetheless provides constructive notice.

## B.

Defendant argues that its construction of § 44–14–33, as amended, is correct for

---

1. This section is limited to manner of attestation; it does not incorporate § 44–14–33 in its entirety and does not otherwise address the question of when a security deed provides constructive notice. A security deed, which conveys title to real property, is not a type of mortgage, which only creates a lien. O.C.G.A. § 44–14–60. The Court has not found any other statute that would apply the second sentence of § 44–14–33 to security deeds. Because the parties did not raise this issue, however, the Court will address the arguments of the parties as if the second sentence of § 44–14–33 applied to security deeds.

the following reasons: (1) its meaning is plain; (2) the amendment is presumed to have changed the law; and (3) it reflects sound policy.

■ In arguing that its construction of § 44–14–33 reflects the plain meaning of that section, Defendant ignores the key words in the sentence added by the amendment. The 1995 amendment states that "*such* recordation shall be deemed constructive notice to subsequent bona fide purchasers," not that any recordation provides constructive notice. (Emphasis added.) The words "such recordation" relate back to the words "*duly* filed, recorded, and indexed." (Emphasis added.) Only a "duly" recorded mortgage provides such notice.

■ Defendant's reading overlooks the rule of statutory construction that "courts should construe a statute to give 'sensible and intelligent effect' to all of its provisions and should refrain, whenever possible, from construing the statute in a way that renders any part of it meaningless." *Sikes v. State*, 268 Ga. 19, 21, 485 S.E.2d 206, 208 (1997). If the amendment to § 44–14–33 has the same meaning whether or not the word "duly" is present, the word "duly" would be rendered meaningless. Defendant's construction reads the word "duly" out of the statute.

"Generally, 'duly done' means done according to law. *See, Ingram v. Smith*, 62 Ga.App. 335(1), 7 S.E.2d 922; *Tyler v. Jones County Bank*, 78 Ga.App. 741, 52 S.E.2d 547; Black, Law Dictionary, 591." *Nussbaum v. Shaffer*, 105 Ga.App. 430, 431, 124 S.E.2d 658, 660 (Ga.App.1962). In *Bank of Cumming v. Goolsby*, 34 Ga. App. 217, 129 S.E. 8 (Ga.App.1925), the Georgia Court of Appeals explained the issue in that case and its resolution as follows:

On the instant trial of a money rule, involving the relative priorities of a mortgage on realty, recorded but having only one witness, and of a subsequent **duly** recorded mortgage, where both parties agreed in open court that the one issue in the case which should be submitted to the jury was whether or not the holder of the subsequent mortgage had "actual notice" of the earlier outstanding mortgage "at the time it took its mortgage," and where such question was thus submitted, the court did not err, in the absence of a proper request, in failing to define the exact legal meaning of the term "actual notice" or knowledge, or to charge upon constructive notice by stating the legal effect of the imperfect record of a mortgage on realty having only one subscribing witness.

*Id.* (Emphasis added.) The trial court had submitted the question of actual notice to the jury because the earlier deed, having only one witness, did not provide constructive notice of its existence. In distinguishing "a mortgage on realty, recorded but having only one witness" and "a subsequent duly recorded mortgage," the Court of Appeals necessarily held that a "duly" recorded mortgage is one that is attested by the requisite number of witnesses.

Defendant asserts that "[a]ccepting the Trustee's definition of 'duly,' under O.C.G.A. § 44–14–33, neither patently nor latently defective deeds could be duly recorded because the term 'duly' requires that it be proper in 'both form **and substance**' and must be 'properly . . . upon a foundation **as distinguished from mere form.'**" Defendant's Reply, Document 45, p. 4 (emphasis in the original). Defendant erroneously assumes that the word "duly" defines the acceptable form of a mortgage. The word "duly" refers to the *proper* execution of the duty of clerks who file and record mortgages.

A "duly" filed and recorded mortgage is obviously one that a clerk is authorized by law to record. The second sentence of § 44–14–33 must be read in light of the first sentence, which instructs clerks to "admit" a mortgage to record only if it is attested or acknowledged by an authorized officer and one additional witness. It is the appearance of the appropriate signatures on the deed that permits the clerk to record an attested deed. An unattested or partially attested deed, even if recorded, cannot provide constructive notice because it cannot be "duly filed, recorded and indexed." *Farinash v. First Union (In re Blackmon)*, 283 B.R. 910 (Bankr.E.D.Tenn.2002).

### C.

Defendant argues that its construction of the amendment to § 44–14–33 is supported by the presumption that when the Legislature amends a statute, it intends "to make some change in the existing law." *Balest v. Simmons*, 201 Ga.App. 605, 607, 411 S.E.2d 576 (Ga.App.1991). Treating that presumption as a virtual certainty, Defendant concludes that the amendment must have been directed to changing the law concerning deeds with patent defects because the amendment did not change the law with respect to deeds with latent defects, which the Supreme Court dealt with in the *Leeds* case.

The presumption on which Defendant relies is inapplicable here because the meaning of the statute is not in doubt as shown above. "Where the language of the statute is clear, unambiguous, and does not lead to any absurd or impractical consequences, this Court is prohibited from construing the statute differently than the terms of the statute." *Aldrich v. City of Lumber City*, 273 Ga. 461, 464, 542 S.E.2d 102, 105 (2001).

Further, the presumption of intent to change the law gets no traction where, as here, the amendment makes no direct or indirect reference to any other law. *Cf. Board of Assessors of Jefferson County v. McCoy Grain Exchange, Inc.*, 234 Ga.App. 98, 100, 505 S.E.2d 832, 834 (Ga.App.1998) (preamble of amendment stated that it was to change a particular law). Arguably a valid starting point for further analysis, the presumption finds no support in the text of the sentence added to § 44–14–33. Where an amended statute is not necessarily inconsistent with its previous language, it is not clearly evident that the Legislature intended to change the law. *In re J.W.K.*, 276 Ga. 314, 316, 578 S.E.2d 396, 398 (2003); *Aldrich v. City of Lumber City, supra; Cf. Board of Assessors of Jefferson County v. McCoy Grain Exchange, Inc.*, 234 Ga.App. 98, 100, 505 S.E.2d 832, 834 (Ga.App.1998) (noting that notwithstanding a presumption that the legislature intended to change the law, an amendment to a statute might merely clarify the law as it already existed).

It is also possible that the Legislature intended to address an apparent uncertainty regarding application of the law of attestation by the amendment to § 44–14–33. In *Sears Mortg. Corp. v. Leeds Bldg. Products, Inc.*, 219 Ga.App. 349, 350, 464 S.E.2d 907, 908–909 (1995), *rev'd sub nom. Leeds Building Products, Inc. v. Sears Mortgage Corp., et al.*, 267 Ga. 300, 477 S.E.2d 565 (1996), a builder, Peach Communities, Inc., purchased construction materials on credit from Leeds Building Products, Inc. To secure its obligation to pay for the materials, Peach gave Leeds security deeds on each of its properties. Although signed, these security deeds were not properly attested because the unofficial witness did not actually see Peach's representative sign them. The plaintiffs in the case purchased or financed purchases of the properties as to which

Peach had previously given security deeds to Leeds. After Peach filed bankruptcy, Leeds declared defaults and sought to foreclose on the various properties. The plaintiffs sued to stop the foreclosures. The trial court found that the deeds provided constructive notice to plaintiffs and granted Leeds' motion for summary judgment.

The Georgia Court of Appeals reversed, stating:

> "[A] deed not properly attested or acknowledged, as required by statute, is ineligible for recording and, even if recorded, does not constitute constructive notice. [Cit.]" *Higdon v. Gates*, 238 Ga. 105, 107, 231 S.E.2d 345 (1976). If the property is subsequently purchased without actual notice of the improperly recorded security deed, the subsequent purchaser's title is superior to the improperly recorded security deed. See OCGA § 44-2-1. *See also Donalson v. Thomason*, 137 Ga. 848(5), 74 S.E. 762 (1912).

*Sears Mortg. Corp. v. Leeds Bldg. Products, Inc.*, 219 Ga.App. at 350, 464 S.E.2d 907. The Supreme Court reversed, holding that a security deed with a latent defect provided constructive notice of its existence to a bona fide purchaser.

Of course the Legislature did not know in the first half of 1995 what the final outcome of the *Leeds* case would be: 1995 Ga. S.B. 243 was enacted on April 20, 1995, the decision of the Court of Appeals was not issued until December 1, 1995, and the Supreme Court's reversal came in 1996. It is possible, however, that the Legislature was motivated by a desire to pre-empt what it feared the courts might construe as existing law, particularly if it was aware of the controversy in the *Leeds* case. All this is to say is that the canon of construction invoked by Defendant—that an amendment gives rise to a presumption of legislative intent to change the law—is useful only so far as it goes, which is nowhere in this case because it does nothing to clarify what the Legislature perceived the law to be prior to the amendment.

■ Finally, the construction urged by Defendant conflicts with and would repeal by implication O.C.G.A. § 44-14-39, which provides:

> A mortgage which is recorded in an improper office or *without due attestation* or probate or which is so defectively recorded as not to give notice to a prudent inquirer shall not be held to be notice to subsequent bona fide purchasers. A mere formal mistake in the record shall not vitiate it.

(Emphasis added.) Section 44-14-39 flatly contradicts Defendant's interpretation of § 44-14-33. O.C.G.A. § 44-2-14(a)-(c) is also inconsistent with Defendant's interpretation; subsections (b) and (c) of § 44-2-14 were added to the statute in 1994, only one year before the amendment to § 44-14-33.[2]

Although the preamble of the Act that added the second sentence to § 44-14-33 provides that conflicting laws are repealed, and section 2 of the Act states "[a]ll laws and parts of laws in conflict with this Act are repealed," Ga. Laws 1995, p. 1076, the Act does not identify any conflicting law. Most Acts passed by the Georgia Legisla-

---

**2.** Defendant's interpretation of the 1995 amendment would conflict with § 44-2-14 because a deed with no witnesses would provide constructive notice but a deed having one witness but missing the address of the person to whom the deed is to be returned, who could be a total stranger to the transaction, would not. From a policy standpoint, this would make no sense.

ture in 1995 contain identical language concerning repeal of conflicting laws. *See* Ga. Laws 1995. Which law, if any, was repealed, can only be identified by first determining a reasonable construction of § 44–14–33 and then determining whether a particular law is in conflict with that construction. The mere fact that the Act contained language repealing inconsistent laws does not mean that any existed. *See, e.g., National Bank of Georgia v. Morris–Weathers Co.,* 248 Ga. 798, 799, 286 S.E.2d 17, 18 (1982) ("While it is true that § 110–515 as amended provides that all laws or parts of laws in conflict are repealed, Ga.L. 1966, p. 142, we find no conflict which requires a repeal.")

■■■■ "Repeals by implication are not favored and result only where the two acts cannot stand together under any reasonable construction. *Eley v. Greene County Bd. of Comm'rs,* 258 Ga. 562, 372 S.E.2d 231 (1988)." *Gilbert v. Richardson,* 264 Ga. 744, 749 n. 6, 452 S.E.2d 476 (1994). As shown above, a reasonable construction of the amendment to § 44–14–33 is that it applies only to mortgages that clerks are permitted lawfully to admit to record, even if later shown to be latently defective. It follows that repeal of § 44–14–39 may not be implied. Because that section has not been repealed, it is clear that an unattested mortgage cannot provide constructive notice to a bona fide purchaser.

### D.

Defendant contends that the Legislature amended § 44–14–33 to eliminate unfair treatment of commercial lenders with respect to otherwise legitimate loans secured by deeds inadvertently filed without proper attestation and did so in part because "[i]ndices are computer generated in alphabetical order, and most real estate records now are available on-line." Defendant's Memorandum of Law, Document No. 28, p. 11. Defendant makes no showing that the statute reflects such a policy. Its contention that changes in technology motivated the Legislature to amend § 44–14–33 rewrites history. There was no on-line access to computerized real estate records in 1995; indeed, the Internet was in its infancy. And the Legislature did not require the use of computers to maintain real estate records until 2002. *See* O.C.G.A. § 44–2–2.

The Court cannot agree that the Legislature meant to protect lenders (and in reality negligent lawyers and title insurers who rely on them) at the expense of a system of recordation designed to inspire confidence in the real estate market. Attestation serves to enhance the reliability of a deed—to increase the odds that the grantor in fact executed the deed. It creates a presumption of genuineness, *Guthrie v. Gaskins,* 171 Ga. 303, 306, 155 S.E. 185 (1930), for the purpose of inducing the public to act on that presumption because "[t]he object of the execution of a deed before two witnesses, one of whom must be an officer authorized to attest deeds, is to entitle it to be recorded." *Plowden v. Plowden,* 52 Ga.App. 741, 749, 184 S.E. 343 (Ga.App.1935). A necessary corollary is that "[t]he law for recordation is for the purpose of giving constructive notice to all persons other than the parties to the instrument." *Gilliam v. Burgess,* 169 Ga. 705, 708, 151 S.E. 652 (1930). Constructive notice is another way of saying that duly filed, recorded, and indexed deeds and mortgages are worthy of a presumption of genuineness, which enhances predictability and thereby encourages commerce in real property. An unattested deed cannot be presumed genuine merely because a clerk erred by recording it.

The interpretation of § 44–14–33 advocated by Defendant would relieve lenders of any obligation to present properly at-

tested security deeds. It would tell clerks that the directive to admit only attested deeds is merely a suggestion, not a duty, because there would be no penalty on anyone for presenting or accepting defective deeds. It would reward the negligence of lenders and their agents in those few instances in which a county clerk's employee carelessly accepts a defective deed. It would hobble, with a single sentence (in a section that begins by commanding clerks not to accept unattested deeds), a time-tested system of recording real estate transactions at the core of which is a general and well-grounded suspicion of unattested deeds. In reality, Defendant's interpretation of § 44–14–33 would tend to lead to an increase in the presentation of fraudulent deeds; one reason the present requirement of attestation discourages such fraud is because it operates in tandem with the presumption that a public officer or notary public sworn to do his or her duty, one of which is to attest or witness a signature on a deed, will in fact do so. *See Mills v. Parker*, 253 Ga.App. 620, 623, 560 S.E.2d 42, 45 (Ga.App.2002) ("A notary public is under a duty to faithfully execute his or her duty under the law. See OCGA §§ 45–17–5; 45–17–20(a).")

Defendant's construction of § 44–14–33 would shift to the subsequent bona fide purchaser and everyone else the burden of determining the genuineness of the grantor's signature and therefore the cost of investigating and perhaps litigating whether or not an unattested deed was in fact signed by the grantor, when the law imposes in the first place a duty on lenders to present properly attested deeds. Although it might not be difficult to determine the truth with respect to a commercial loan if the attestation error is caught soon enough, determining the truth becomes problematical if the grantor is dead or cannot be found. These added costs

could arise in every instance of an unattested or partially attested deed where the parties to a later transaction become aware of the defective deed, whether or not the deed was in some way fraudulent. By contrast, it costs nothing and requires no special expertise or effort for a closing attorney, or a lender, or a title insurance company to examine the signature page of a deed for missing signatures before it is filed.

### E.

Another reason to doubt the construction urged by Defendant is the absence of any scholarly commentary to support it. The leading treatise on Georgia real property law confirms that the amendment was directed to latent defects in deeds, not to patent defects such as missing attestations:

> Both [§ 44–14–33 and *Leeds Building Products, Inc. v. Sears Mortgage Corp.*, 267 Ga. 300, 477 S.E.2d 565 (1996) ] provide that in the absence of fraud a deed or mortgage, *which on its face does not reveal any defect in the acknowledgment of the instrument and complies with all statutory requirements,* is entitled to be recorded, and once accepted and filed with the clerk of the superior court for record, provides constructive notice to subsequent bona fide purchasers of its existence.

2 Pindar's Georgia Real Estate Law & Procedure, § 20–18 (2004) (footnote omitted) (emphasis added). This treatise makes no mention of any change in the law with respect to patently defective security deeds.

A treatise on foreclosure law in Georgia also does not subscribe to Defendant's theory of a change in the law: "A security deed that is defective as to attestation, *but*

*without facial defects,* provides constructive notice to subsequent bona fide purchasers." GEORGIA REAL ESTATE FINANCE AND FORECLOSURE LAW, § 8–10, p. 138 (2004) (footnote omitted) (emphasis added). This treatise does not mention the construction of the 1995 amendment urged by Defendant. Similarly, in an article in the 1997 Annual Survey of Georgia Law published by the Mercer Law Review, the authors described the effect of the amendment to § 44–14–33 as follows:

> This amendment [to § 44–14–33] resolves the issue that was before the court in *Leeds Building Products,* at least with regard to security deeds executed after the effective date of that amendment. However, the holding leaves open the issue of whether that amendment applies retroactively to deeds executed before July 1, 1995 that contain *latent defects* other than in the method of attestation.

T. Daniel Brannan and William J. Sheppard, *Real Estate,* 49 MERCER L.REV. 257, 263 (Fall 1997) (footnote omitted) (emphasis added). The authors did not hint, much less opine, that the amendment altered Georgia law with respect to patently defective deeds, an omission that would be quite remarkable if the amendment altered a law in place for many decades prior to 1995.[3]

## II.

The remaining issue raised by Defendant is whether the words "Second Mortgage" at the foot of the first page of the second security deed impose a duty of inquiry that would lead to the discovery of the first security deed.[4] A purchaser has constructive notice of a duly recorded deed, and "[a]ny circumstance which would place a man of ordinary prudence fully upon his guard, and induce serious inquiry, is sufficient to constitute notice of a prior unrecorded deed." *Price v. Watts,* 223 Ga. 805, 805, 158 S.E.2d 406, 407 (1967) (quoting *Gardner v. Granniss,* 57 Ga. 539, 541 (1876)). This principle is codified by O.C.G.A. § 23–1–17, which provides in relevant part that "[n]otice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found that such inquiry might have led."

In support of this argument, Defendant relies on *Updike v. First Federal Savings and Loan Association of Columbus (In re Updike),* 93 B.R. 795, (Bankr.M.D.Ga.1988); *Page v. Will McKnight Const., Inc.,* 282 Ga.App. 571, 572, 639 S.E.2d 381, 383 (Ga.App.2006) and *Bowman v. Century Funding, Ltd.,* 277 Ga.App. 540, 542–543, 627 S.E.2d 73, 76–77 (Ga.App.2006). These cases are distinguishable and therefore inapposite.

In *Updike,* the duly recorded deed referred to a specific prior unrecorded deed. Here, the second security deed makes no reference to a specific prior deed. It does not even state any prior deed on the same property in fact exists. In *Bowman,* a properly recorded affidavit of descent stated that a decedent was married "ONE time" but also gave the name of the spouse as N/A, meaning "not applicable." The affidavit was, therefore, "self-contradicto-

---

3. Immediately following the text of § 44–14–39 in the Official Code of Georgia Annotated, Vol. 32, p. 389 (2002), the location of the section in prior Codes is set out as follows: "(Orig.Code 1863, § 1961; Code 1868, § 1949; Code 1873, § 1959; Code 1882, § 1959; Civil Code 1895, § 2729; Civil Code 1910, § 3262; Code 1933, § 67–111.)"

4. Defendant's argument that the first security deed itself give rise to a duty of inquiry because it was allegedly indexed confuses constructive notice with actual notice and is totally without merit.

ry" such that a reasonable person could not conclude that the affidavit properly identified the decedent's heirs. Here, by contrast, the words "Second Mortgage" are not a part of the deed proper and are not inconsistent with any provision in the deed.

In *Page*, the plaintiff brought a declaratory judgment action seeking a judgment that his security deed executed by Jerry Page had priority over an earlier deed that was defectively recorded because the clerk recorded it only under a corporate name and not under Page's name. A jury determined that plaintiff had actual notice of the earlier deed based on conflicting testimony about whether the grantor told the plaintiff about the earlier deed. The disputed testimony also concerned a letter the grantor stated he faxed to the plaintiff, which plaintiff did not recall receiving, that referred to the parcel described in plaintiff's security deed. The fax and the testimony of Page "raised the factual question submitted to the jury—this is, whether [the plaintiff] had actual notice of the encumbrance. . . ." *Page v. Will McKnight Const., Inc.,* 639 S.E.2d at 383. The present adversary proceeding does not involve actual notice because a bankruptcy trustee has no actual notice and instead turns on whether a bona fide purchaser would have had constructive notice of the unattested first security deed. The *Page* case thus does not support Defendant's argument that the name of the form used in preparing the second security deed was so unusual as to excite the attention of a bona fide purchaser.

The precise question presented is whether the words "Second Mortgage" at the foot of the first page of the second security deed would alone excite the attention of a person of ordinary prudence, causing such a person to infer or to discover the existence of the first security deed.

The Court answers this question in the negative for the following reasons.

The words "Second Mortgage" do not refer to an earlier deed but instead name the printed form used in the preparation of the second security deed. A deed prepared using that form would be a junior security deed only if there were a senior security deed, but the name of the form is not evidence of a senior deed. Indeed, the form could be used to create a valid first priority lien on real property.

More importantly, the second security deed states in paragraph 4 that "Borrower shall perform all of Borrower's obligations under any security deed, mortgage, deed of trust or other security agreement with a lien which has priority over this Deed. . . ." Defendant's Memorandum of Law, Document no. 28, p. 83. Neither paragraph 4 nor any other provision in the second security deed states or implies that a senior lien in fact exists. A person of ordinary prudence would not infer that the name of a printed form was meant to convey more information than what the deed itself states.

The unattested first security deed was also prepared using a form. Its paragraph 4 also deals with the possibility of prior senior deeds in stating, "Borrower shall promptly discharge any lien which has priority over this Security Instrument [unless the Lender consents]." Defendant's Memorandum of Law, Document No. 28, p. 26. Like paragraph 4 of the form used for the second security deed, paragraph 4 in the first security deed neither states nor implies that a senior lien in fact exists. If the language in paragraph 4 of the second security deed implied the existence of a senior lien, the language in paragraph 4 of the first security deed would do so as well.

 Each of these security deeds states at the foot of the initial page that it

is a "Fannie Mae/Freddie Mac Uniform Instrument," i.e., that is approved by Federal Home Loan Mortgage Corporation and by Federal National Mortgage Corporation.[5] Thus, such provisions in security deeds dealing with a borrower's obligation with respect to any senior lien that might or might not exist are common. It is for that very reason that they do not excite attention.

In order to bind a subsequent purchaser with notice, he must have actual notice of the deed, or knowledge of such facts which would set a prudent man upon inquiry; and, as a deduction from this rule, the law imputes to a purchaser a knowledge of every fact which appears upon the monuments of title, or which one should inquire after in the investigation of the title. Thus, a deed in the chain of title discovered by the investigator is constructive notice *of all other deeds which were referred to* in the deed discovered.

*Talmadge v. Interstate Building & Loan Ass'n.,* 105 Ga. 550, 553, 31 S.E. 618 (1898). (Emphasis added.) The Georgia Supreme Court has consistently adhered to this case law. *Smith v. Federal Land Bank of Columbia,* 181 Ga. 1, 181 S.E. 149, 150 (1935) ("Where the description is sufficient to afford the key by which the land may be definitely located by the aid of extraneous evidence, the record of the deed is sufficient to put a subsequent purchaser 'from the same grantor on notice as to what land was in fact conveyed by such deed.'" quoting *Talmadge v. Interstate Building & Loan Ass'n, supra* ); *Kilby v. Sawtell,* 203 Ga. 256, 257, 46 S.E.2d 117, 121 (1948) ("Where a deed to land refers to a map or plat for a more complete description of the land conveyed, such map or plat will ordi-

narily be considered as incorporated in the deed itself"); *Deljoo v. SunTrust Mortg., Inc.,* 284 Ga. 438, 440, 668 S.E.2d 245, 247 (2008) ("The reference in Deljoo's deed to the Villas at Hidden Hills subdivision plat by book and page number 'is considered as incorporated in the deed itself.' *Talmadge, supra* at 554, 31 S.E. 618"). In contrast to the deeds described in those cases and in *Matter of Updike, supra,* the second security deed refers to no other specific deed, map or plat.

Defendant is essentially arguing that the mere suggestion in a security deed that a senior lien might exist would excite attention, even in the absence of a key to a senior lien. If adopted, it would neuter the statutes requiring proper attestation. Moreover, even as to properly attested security deeds like the second security deed here, purchasers would have the financial burden of making inquiries beyond what the public record shows because the language in the paragraph 4 is not limited to deeds of record.

By contrast, it is no burden at all to follow the law concerning attestation of deeds. All that a closing attorney, a lender, an assignee of a lender, or title insurer has to do to see whether a signature on a deed is missing is to look at the signature page of the deed.

For these reasons, Plaintiff's motion for summary judgment is GRANTED and Defendant's motion for summary judgment is DENIED.

**5.** See, e.g., http://www.freddiemac.com/uniform/unifsecurity.html and https://www.efanniemae.c om/sf/formsdocs/documents/sec-instruments—Form 3011: Georgia Security Deed.