**In re MUNICIPAL CORRECTIONS, LLC, Debtor.**

**Detention Management, LLC and Municipal Corrections, LLC, Plaintiffs,**

**v.**

**UMB Bank, NA, as Successor Indenture Trustee, Defendant.**

**Bankruptcy No. 13–50786–PWB. Adversary No. 13–5018.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Sept. 30, 2013.

Ogonna M. Atamoh, Richard F. Holley, Las Vegas, NV, Henry F. Sewell, Jr., McKenna, Long & Aldridge, LLP, Atlanta, GA, Austin E. Carter, Stone & Baxter, LLC, Macon, GA, for Plaintiffs.

Kevin A. Stine, Baker Donelson, Atlanta, GA, for Defendant.

### *ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO STRIKE*

PAUL W. BONAPFEL, Bankruptcy Judge.

## I. Introduction

In an unrecorded trust indenture agreement for the issuance of tax-exempt bonds, plaintiff Municipal Corrections, LLC (the "Debtor"), the Chapter 11 debtor in possession in this case, "pledged and assigned" its interest in its real property to secure its obligation to pay the bonds. The indenture trustee for the bondholders is the defendant UMB, N.A. (together with Bank of Oklahoma, N.A., the original trustee, the "Bond Trustee"). The Bond Trustee is the legal holder of the security interest on behalf of the bondholders.

The Debtor and one of its primary creditors [1] seek a determination of the nature,

---

**1.** The other plaintiff is Detention Management, LLC, the Debtor's largest creditor other than the Bond Trustee. Detention Management initiated this adversary proceeding, and the Debtor later joined as a party plaintiff. Order entered Feb. 21, 2013 [Docket No. 21]. The claims belong to the Debtor, exercising the powers of a bankruptcy trustee as a debt-

extent, and validity of the Bond Trustee's lien on the real property, contending that it has no such lien. In addition, they seek the avoidance of any lien the Bond Trustee has on the real property under 11 U.S.C. § 544(a)(3) on the ground that it is unenforceable against a hypothetical bona fide purchaser under Georgia law.

The dispute presents two questions arising under Georgia real estate law. The first is whether the "pledged and assigned" language in the indenture agreement created a mortgage in favor of the Bond Trustee. If so, the second question is whether other recorded documents and an order of the Superior Court validating the bonds provide constructive notice of the unrecorded interest or give rise to a duty of inquiry such that the unrecorded interest is nevertheless enforceable against a purchaser. If they do not, any interest of the Bond Trustee is avoidable under 11 U.S.C. § 544(a)(3), which permits a bankruptcy trustee (or a Chapter 11 debtor in possession with the powers of a trustee under 11 U.S.C. § 1107(a)) to avoid an interest in real property that a hypothetical bona fide purchaser could avoid under applicable state law.

■ Both the plaintiffs[2] and the defendant[3] filed motions for summary judgment and statements of undisputed material facts. No dispute of material fact exists. The Court concludes as matters of law that the Indenture gave the Bond Trustee a mortgage on the real property and that it is enforceable against a bona fide purchaser under principles of constructive and inquiry notice that apply under Georgia law.[4] Accordingly, the Court will grant the Bond Trustee's motion for summary judgment and deny those of the plaintiffs.

The Bond Trustee submitted affidavits of title examiners in support of its motion for summary judgment and in opposition

---

or in possession. 11 U.S.C. § 1107(a). The Bond Trustee has questioned the authority of Detention Management to prosecute them. Answer, Fourth Defense [Docket No. 16]. Brief in Support of Defendant's Motion for Summary Judgment [Docket No. 30–1] at 1, n. 1. In view of the joinder of the Debtor and its assertion of the same claims as Detention Management, the Court need not determine whether circumstances exist that would permit Detention Management to prosecute the claims.

2. Plaintiff Detention Management, LLC's Motion for Summary Judgment [Docket No. 32] and Undisputed Material Facts and Theories of Recovery in Support of Plaintiff Detention Management, LLC's Motion for Summary Judgment [Docket No. 33]; Plaintiff Municipal Corrections, LLC's Motion for Summary Judgment [Docket No. 37] and Plaintiff Municipal Corrections, LLC's Statement of Material Facts as to Which There is No Genuine Issue to be Tried [Docket No. 38].

3. Defendant's Motion for Summary Judgment [Docket No. 30] and Defendant's Statement of Undisputed Material Facts [Docket No. 30–2].

4. This Court has authority to hear and determine this proceeding under 28 U.S.C. § 157(b)(1) as a core proceeding under 28 U.S.C. § 157(b)(2)(K) within the District Court's jurisdiction under 28 U.S.C. § 1334(b) that the District Court has referred under 28 U.S.C. § 157(a) and L.R. 83.7, NDGa.

Pursuant to Fed. R. Bankr.P. 7008(a), the Plaintiffs' complaint specifically alleges that this is a core proceeding under 28 U.S.C. § 157(b)(2)(K) and states that the plaintiffs consent to the bankruptcy court's entry of final orders or judgment if it is non-core. (Complaint [Docket No. 1] ¶ 5). The Defendant did not state its position on these matters in its answer, although Fed. R. Bankr.P. 7012(b) requires it. (Answer [Docket No. 16] ¶ 5). The Court construes the defendant's failure to address these matters in its answer or otherwise and its request that the Court enter judgment in its favor as consent to the Court's entry of final judgment on the issues. Thus, the Court also has authority to determine this adversary proceeding under 28 U.S.C. § 157(c)(2) based on the consent of all parties.

to those of the plaintiffs. Detention Management has moved to strike the affidavits. [Docket No. 51]. The Court can decide, and has decided, the legal issues in this case based on the undisputed facts without regard to the expert opinions of the examiners. It is, therefore, not necessary to consider the motion to strike, and the Court will dismiss it as moot.

## II. STATEMENT OF FACTS

### A. Background and General Description of the Transaction

Municipal Corrections, LLC (the "Debtor") owns a detention facility on land in Irwin County, Georgia (the "Real Property"). The Debtor leases the detention facility to Irwin County (the "County"), which pays rent based on the number of County prisoners confined in the facility and the fees that various other governments, primarily agencies of the United States government, pay for the confinement of their detainees.

The Debtor obtained financing for the detention facility through various tax-exempt trust indenture arrangements dating back to 1990. This type of financing involves the County as the issuer of bonds, making the interest paid to the bondholders exempt from Georgia and federal income taxes. The County issues bonds to an underwriter for sale to investors, and the County then loans the proceeds to the Debtor.[5] A trustee named in the inden-

ture (herein called the "Bond Trustee") collects funds to make payments to bondholders and administers and enforces the bonds on their behalf.

The obligations of the County both under the lease and as issuer of the bonds are not general obligations of the County. The source of money to pay the bondholders is the rent that the County pays under the lease that, as just mentioned, depends on the number detainees in the facility. This revenue stream is assigned to the Bond Trustee.

The transactions here occurred in 2007. Under a Trust Indenture dated August 1, 2007, between Bank of Oklahoma, N.A., as bond trustee, and the Debtor (the "Indenture"),[6] the Debtor obtained financing in the amount of 55 million dollars. The County disbursed the funds received from the issuance of bonds to satisfy existing indebtedness incurred under a previous bond financing transaction and to the Debtor for use in expansion of the detention facility. The defendant, UMB, N.A., later replaced the Bank of Oklahoma and is now the successor bond trustee under the Indenture. UMB, N.A., together with Bank of Oklahoma, N.A., is referred to as the "Bond Trustee."

At the time of the new financing, the Debtor, as lessor, and the County, as lessee, entered into a new Lease Agreement (the "Lease").[7] The Indenture and the

---

5. The financing transaction is summarized in the Petition and Complaint for Validation Order, ¶¶ 3–10, filed in the Superior Court of Irwin County on July 12, 2007, Exhibit C–1 to Defendant's Statement of Undisputed Material Facts [Docket No. 30–8 at 3].

6. A copy of the Indenture is attached as Exhibit 1 to the Debtor's Motion for Summary Judgment. [Docket No. 37–1]. A copy is also in Exhibit B to the Bond Trustee's Statement of Undisputed Material Facts. (Exhibit B is in four parts, Docket Nos. 30–4 through 30–7. The Indenture begins at Docket No. 30–4 at

8.) Exhibit B is the Bond Trustee's Request for Admissions to the Debtor, which on page 3 requested admission of the authenticity of the copy of the Indenture attached to the request as Exhibit A. [Docket No. 30–4 at 3]. The Debtor admitted this in its response, attached as Exhibit A to the Bond Trustee's Statement of Undisputed Material Facts [Docket No. 30–3].

7. A copy of the Lease is attached as Exhibit 2 to the Debtor's Motion for Summary Judgment. [Docket No. 37–2]. A copy is also in Exhibit B to the Bond Trustee's Statement of

Lease provide for the County to make all lease payments to the Bond Trustee. Under provisions of the Indenture and the Lease, the Bond Trustee retains sufficient proceeds to satisfy the Debtor's obligations under the Indenture and to pay the bondholders and remits other funds to the Debtor for, among other things, payment of expenses for the operation of the detention facility. The Debtor and Irwin County executed the Lease before official and unofficial witnesses.

To secure payment of the bonds, the Debtor assigned and pledged the Lease, together with all revenues from the Lease, to the Bond Trustee. In the Indenture, the Debtor also pledged and assigned to the Bond Trustee its interest in the Real Property.[8] The transaction documents do not contain any other conveyance of an interest in the Real Property. In particular, the Debtor did not execute a deed to secure debt.

The Lease includes an option for the County to purchase the detention facility, including the Real Property, under specified terms. Moreover, at the expiration of the term of the Lease, the County is entitled to a conveyance of the property,[9] without payment of any consideration, on the condition that the bonds have been paid in full.

As Georgia law requires because the County is the issuer of the bonds, the Superior Court of Irwin County entered an order validating the issuance of the bonds on July 30, 2007 (the "Validation Order").[10] The parties executed the documents referred to above as of August 1, 2007.

The Debtor later contracted with Detention Management, LLC ("DM") for DM to manage the detention facility. Eventually, the facility did not have enough detainees to produce sufficient rent to permit payment of operating expenses and required debt service obligations. DM advanced funds to the Debtor for payments on the bonds. DM has a claim against the Debtor for amounts advanced and unpaid management fees and is the Debtor's second largest creditor after the Bond Trustee.

## B. Material Terms and Recordation of Principal Documents

The plaintiffs assert that the Bond Trustee has no interest in the Real Property and that, even if it does, the interest is avoidable under 11 U.S.C. § 544(a)(3) because it is not recorded and, therefore, is not enforceable against a bona fide purchaser under Georgia law.

In a financing transaction in Georgia involving real estate as collateral for a

---

Undisputed Material Facts. (Exhibit B is in four parts, Docket Nos. 30–4 through 30–7. The Lease begins at Docket No. 30–5 at 30.) Exhibit B is the Bond Trustee's Request for Admissions to the Debtor, which on page 3 requested admission of the authenticity of the copy of the Lease attached to the request as Exhibit C. [Docket No. 30–4 at 3]. The Debtor admitted this, except for the absence of certain exhibits, in its response, attached as Exhibit A to the Bond Trustee's Statement of Undisputed Material Facts [Docket No. 30–3].

8. Indenture at 2 [Docket No. 37–1 at 7].

9. The option in the Lease gives the County the option to buy the "Project" which includes

"Land" in its definition. The definition of "Land" is the real property described in Exhibit A, which, in turn, provides a legal description of the Real Property.

10. Validation Order, Superior Court of Irwin County, Civil Action File No. 2007CV 199 (July 30, 2007). Exhibit C to the Bond Trustee's Statement of Undisputed Material Facts includes copies of the petition initiating the validation proceeding and of the Validation Order. Exhibit C is in two parts, Docket Nos. 30–8 and 30–9. The petition begins at Docket No. 30–8 at 1. The Validation Order begins at Docket No. 30–9 at 50.

debt, one would expect the creditor to have a duly executed deed to secure debt properly recorded in the real estate records of the county in which the land lies. The issues here arise because no such deed to secure debt exists and the Irwin County real estate records do not include any properly recorded document that grants the Bond Trustee a lien on the Real Property.

Resolution of the legal issues in this proceeding involves consideration of the terms of five principal documents relating to the Real Property, and the recordation of three of them. The two unrecorded documents are the Indenture and the Validation Order. The documents recorded in the real estate records are the Lease, a Memorandum of Trust Indenture, and a fixture filing under Georgia's Uniform Commercial Code. The facts with regard to execution and recordation are not in dispute.

The Bond Trustee's lien claim rests on a single phrase in the Indenture. It states, "[T]here is hereby pledged and assigned to the [Bond] Trustee (a) [the Debtor's] interest in the real estate located in Irwin County, Georgia, the same being more particularly described in Exhibit A hereto attached and made a party hereof...." [11] Exhibit A is a full legal description of the Real Property. The Indenture itself is not recorded. Indeed, it is not in recordable form under O.C.G.A. § 44–14–33 because the signatures of the Debtor and the Bond Trustee are not attested by unofficial witnesses.

Having no recorded instrument that grants a lien, the Bond Trustee asserts that it nevertheless holds a mortgage that is enforceable against a bona fide purchaser under Georgia law by virtue of constructive or inquiry notice arising from the recordation of the Lease, the Memorandum of Trust Indenture, the fixture filing, or the entry of the Validation Order.

The Debtor and Irwin County executed the Lease before official and unofficial witnesses, so it is in recordable form. The Bond Trustee presented the Lease for recordation in the real estate records on August 28, 2007. The clerk recorded it, but improperly listed the Debtor as the grantee and the Bond Trustee as the grantor in the record indexes.

The Memorandum of Trust Indenture (the "Memorandum") [12] is a four-page document that summarizes certain provisions of the Indenture. Among other things, it states that, in the Indenture, the Debtor "gave, granted, assigned and pledged" to the Bond Trustee the Debtor's "interest in the real estate located in Irwin County, Georgia, the same being more particularly described in Exhibit A hereto attached and made apart hereof." Exhibit A is a full legal description of the Real Property. The Debtor did not sign it. An officer of the Bank of Oklahoma signed it before a notary public, but no unofficial witness attested the signature. The clerk duly recorded it in the real estate records, accurately noting the Debtor as grantor and

11. Indenture at 2 [Docket No. 37–1 at 7].

12. A copy of the Memorandum is attached as Exhibit 3 to the Debtor's Motion for Summary Judgment. [Docket No. 37–3]. A copy is also in Exhibit B to the Bond Trustee's Statement of Undisputed Material Facts. (Exhibit B is in four parts, Docket Nos. 30–4 through 30–7. The Memorandum begins at Docket No. 30–5 at 24.) Exhibit B is the Bond Trustee's Request for Admissions to the Debtor, which on page 3 requested admission of the authenticity of the copy of the Memorandum attached to the request as Exhibit B. [Docket No. 30–4 at 3]. The Debtor effectively admitted its authenticity in its response, attached as Exhibit A to the Bond Trustee's Statement of Undisputed Material Facts [Docket No. 30–3].

the Bond Trustee as grantee in the indexes.

The Bond Trustee presented a UCC financing statement and fixture filing notice on August 28, 2007 for filing in the real estate records of Irwin County (the "Fixture Filing"),[13] and the clerk properly recorded it. The financing statement states that the Bond Trustee has a security interest in the fixtures on the Real Property of the Debtor, which it fully and accurately describes. Importantly, the Fixture Filing also notes that the Debtor had pledged and assigned the Real Property to the Bond Trustee "to the extent provided" in the Indenture. The Debtor did not sign the fixture filing.

The Court discusses further provisions of the documents in connection with its analysis of the legal issues to which the documents are material.

### III. Summary of Issues and Analysis

The ultimate issue in this proceeding is whether the Bond Trustee has a lien on the Real Property that is enforceable against a hypothetical bona fide purchaser under Georgia law.

The plaintiffs contend that, because the only writing that purports to grant any interest in the Real Property to the Bond Trustee is the Indenture, the absence of its recordation is fatal to the Bond Trustee's claim of an enforceable lien on the Real Property. The Bond Trustee counters that the Indenture created a mortgage lien on the Real Property and that recordation is not a requirement for its validity.

Even if the Bond Trustee has an interest in the Real Property, the plaintiffs assert that the unrecorded interest is avoidable under 11 U.S.C. § 544(a)(3). Under 11 U.S.C. § 544(a)(3), a bankruptcy trustee (or a Chapter 11 debtor in possession under 11 U.S.C. § 1107(a)) has the power to avoid an unrecorded lien on real property that is not enforceable against a hypothetical bona fide purchaser of real property, without regard to any actual knowledge the trustee possesses. Because no document in the real estate records of Irwin County grants the Bond Trustee an interest in the Debtor's Real Property, the issue here is whether a purchaser would have constructive or inquiry notice of the Bond Trustee's purported lien on the Debtor's Real Property from the available records. If so, the plaintiffs cannot avoid the lien under § 544(a)(3). If not, then the Debtor, as the debtor in possession, stands in the shoes of a bona fide purchaser of real property without notice and can avoid the lien.

For reasons set forth below, the Court concludes that the Bond Trustee has a mortgage lien in the Real Property under the Indenture and that it is enforceable against a hypothetical bona fide purchaser under principles of constructive and inquiry notice under Georgia law. Thus, the Bond Trustee's mortgage lien is not avoidable under 11 U.S.C. § 544(a)(3). The following summarizes the Court's conclusions.

Analysis begins with the plaintiffs' contention that the Bond Trustee does not have a security interest in the Real Prop-

---

13. A copy of the Fixture Filing showing its recordation in the real estate records is in Exhibit B to the Bond Trustee's Statement of Undisputed Material Facts. (Exhibit B is in four parts, Docket Nos. 30–4 through 30–7. The Fixture Filing begins at Docket No. 30–5 at 69.) Exhibit B is the Bond Trustee's Request for Admissions to the Debtor, which on pages 3 and 4 requested admission of the authenticity of the copy of the Fixture Filing attached to the request as Exhibit D. [Docket No. 30–4 at 3]. The Debtor effectively admitted its authenticity in its response, attached as Exhibit A to the Bond Trustee's Statement of Undisputed Material Facts [Docket No. 30–3].

erty at all. The Court concludes that the Indenture grants the Bond Trustee a mortgage lien in the Real Property to secure the Debtor's obligations under it. Although the Debtor did not execute a deed to secure debt with regard to the Real Property, and although the Indenture lacks unofficial witnesses and was not recorded in the Irwin County real property records, Georgia law does not require any of these things as conditions to the creation of a mortgage lien on real property. (Part IV).

Plaintiffs assert, however, that even if the Bond Trustee has a lien under the Indenture, it is not enforceable against a hypothetical bona fide purchaser because the Indenture was not recorded. The Bond Trustee counters that a purchaser of the Real Property would have notice of its interest from a proper title examination that would have revealed the Validation Order, the Memorandum, the Lease, and the Fixture Filing, any one of which would put the purchaser on notice of the Indenture and its grant of a mortgage lien in the Real Property to the Bond Trustee.

The Court concludes under principles of Georgia law set forth in Part V that the Validation Order and the Memorandum do not provide constructive notice or give rise to a duty of inquiry but that both the Lease and the Fixture Filing do. The following summarizes the Court's analysis.

The Validation Order was not recorded in the real estate records of Irwin County and thus provides no constructive notice. Because Georgia law does not require a purchaser to examine lawsuits not reflected in the real estate records to determine interests in real property, it cannot provide a basis for a duty of inquiry. (Part VI). The Memorandum is not recordable under Georgia law and, accordingly, provides no notice whatsoever. (Part VII).

A purchaser must examine a recorded lease of real property. The fact that the clerk improperly indexes a document otherwise in the chain of title, as occurred here, is immaterial because a recorded document puts a purchaser on notice of its contents when it is presented for filing, not when it is properly recorded. The provisions of the Lease are sufficient to put a purchaser on inquiry notice of the Indenture and of the Bond Trustee's interest in the Real Property. (Part VIII).

The Fixture Filing was properly recorded in the Irwin County real estate records. Like the Lease, its provisions are sufficient to put a purchaser on inquiry notice of the Indenture and of the Bond Trustee's interest in the Real Property. The plaintiffs contend, however, that the Bond Trustee had no authority to file the Fixture Filing because it did not grant the Bond Trustee a security interest in fixtures. If this is true, they conclude that its existence must be disregarded as an improper filing. The Court concludes that the Indenture's grant of a security interest in the real estate includes a security interest in fixtures. Because Georgia's Uniform Commercial Code permits the holder of a security interest in fixtures to perfect it by filing, the Court concludes that the Bond Trustee had authority to file the Fixture Filing. (Part IX).

## IV. THE INTEREST OF THE BOND TRUSTEE IN THE REAL PROPERTY

The initial question is whether the Bond Trustee has an interest in the Real Property to secure the Debtor's obligations.

In a typical financing transaction in Georgia involving real estate as collateral, the borrower executes a deed to secure debt, with a power of sale, that transfers legal title to the real estate to the lender. Although the use of a deed to secure debt in a financing transaction is almost univer-

sal in Georgia,[14] it is not the only way that a lender may obtain real estate as collateral for a borrower's obligation. A lender may also take a mortgage on the real estate, which creates an enforceable equitable lien.[15] A lender with a mortgage has different interests in the real estate than one holding a deed to secure debt,[16] but those differences do not matter here.

■■■ The Bond Trustee contends that the Indenture grants it a mortgage in the Real Property. Under Georgia law, a mortgage is created when a party uses property to secure debt to another.[17] Because a mortgage does not pass legal title but merely grants a lien against the property,[18] "[n]o particular form is necessary to constitute a mortgage." O.C.G.A. § 44–14–31. To constitute a mortgage, a document must merely "clearly indicate the creation of a lien and … specify the debt for which it is given and the property upon which it is to take effect." O.C.G.A. § 44–14–31.

■■ The Indenture states that the Debtor "pledged and assigned" its interest in the Real Property "to have and to hold to the Trustee and its successors in said trust and to their assigns forever"[19] as security for payment of the bonds. This language is sufficient under Georgia law to create a lien. *E.g., Horton v. Murden*, 117 Ga. 72, 43 S.E. 786, 787 (1903) ("There must always appear on the face of the instrument enough to indicate an intention

to convey an interest in the property described. But while proper words are necessary, 'grant,' 'bargain,' 'sell,' and other technical expressions need not be used."); *Valdosta Plywoods v. Belote*, 75 Ga.App. 616, 44 S.E.2d 128 (1947).

The provisions of the Indenture specify the debt that the Debtor owes, accurately describe the Real Property, and evidence a clear intent to create a lien on the Real Property. The Court concludes that the Indenture effectively granted the Bond Trustee a mortgage under Georgia law.

■■ Although the Indenture lacked the signatures of unofficial witnesses and was thus not in recordable form, it nonetheless created a valid mortgage as between the parties. As the court ruled in *Baxter v. Bayview Loan Servicing, LLC*, 301 Ga.App. 577, 583, 688 S.E.2d 363, 368 (2009), "[W]hile Georgia law requires that a mortgage be in a certain form to be recordable, it does not make the existence of a mortgage dependent upon whether it satisfies the legal requirements for recording."

Having determined that the Bond Trustee has a mortgage on the Real Property, the Court turns to the question of whether the mortgage lien is avoidable under 11 U.S.C. § 544(a)(3) because it is not enforceable against a hypothetical purchaser under Georgia law.

---

14. 2 PINDAR'S GA. REAL ESTATE LAW & PROCEDURE § 20:1 (7th ed.) (Westlaw reference: GAREAL-EST § 20:1) ("The use of the strict mortgage form in Georgia is rare where real estate is involved."); *Id.* § 20:37 ("The lien and priority of a mortgage differs widely from that of its more commonly used relative, the security deed.").

15. *Id.* § 20:3 (7th ed.) ("If the instrument constitutes a mere mortgage, it passes no title but a lien only. . . .").

16. *Id.* § 20:37.

17. *Id.* § 20:27 ("The traditional function of a mortgage is to secure the performance of some act, usually the payment of money by the maker or someone sponsored by him.").

18. O.C.G.A. § 44–14–30 ("A mortgage in this state is only security for a debt and passes no title").

19. Indenture at 2 [Docket No. 37–1 at 7].

## V. § 544(a)(3) AND RIGHTS OF A HYPOTHETICAL BONA FIDE PURCHASER UNDER GEORGIA LAW

Section 544(a)(3) of the Bankruptcy Code [20] gives a bankruptcy trustee the right to avoid any transfer of property of the debtor that is voidable by "a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists." The Debtor has the rights and powers of a bankruptcy trustee as the debtor in possession in this Chapter 11 case.[21]

"Applicable law" in this proceeding is Georgia law. Thus, the question is whether, under Georgia law, a hypothetical purchaser of the Real Property on the date of the commencement of the Debtor's Chapter 11 case would acquire title to the property free and clear of the Bond Trustee's mortgage.

Analysis of the rights of a purchaser of the Debtor's Real Property as against the Bond Trustee's unrecorded mortgage begins with Georgia's race-notice recordation statute. O.C.G.A. § 44–2–1 provides:

> Every deed conveying lands shall be recorded in the office of the clerk of the superior court of the county where the land is located. A deed may be recorded at any time; but a prior unrecorded deed loses its priority over a subsequent recorded deed from the same vendor when the purchaser takes such deed

without notice of the existence of the prior deed.

■ Thus, a purchaser of an interest in real property for value and without notice of a preexisting but unrecorded interest acquires title unencumbered by the unrecorded interest. This statute protects purchasers of real property from having their rights defeated by a prior but undiscoverable right that another might hold in the property. As noted in *Archer v. Kelley*, 194 Ga. 117, 127, 21 S.E.2d 51 (1942):

> It is by [the recording] statute made the plain duty of a grantee to record his deed, thereby giving constructive notice to every one of its existence and of his rights thereunder; and since it is thus made the duty of such grantee to supply notice, everyone is justified in relying upon an examination of the record and believing that a purchase of land will convey all title which the record fails to disclose is in another.

The Indenture is not in recordable form, so the Bond Trustee could not have recorded it and, in fact, did not do so. But this does not end the inquiry. The statute provides protection only for a purchaser who takes property "without notice" of the prior interest.

■ Georgia law provides that a purchaser takes property free of a prior unrecorded interest unless the purchaser had actual or constructive notice of it [22] or if the circumstances give rise to a duty of inquiry that would have led to the discovery of the prior interest, so-called "inquiry notice." [23] Because a bankruptcy trustee's

---

**20.** 11 U.S.C. § 544(a)(3).

**21.** 11 U.S.C. § 1107(a).

**22.** *E.g., VATACS Group, Inc. v. HomeSide Lending, Inc.*, 276 Ga.App. 386, 623 S.E.2d 534 (2005); *Virginia Highland Civic Ass'n,*

*Inc. v. Paces Properties, Inc.*, 250 Ga.App. 72, 550 S.E.2d 128 (2001) (citing *Anderson v. Streck*, 190 Ga.App. 224, 378 S.E.2d 526 (1989)).

**23.** *Wells Fargo Bank, N.A. v. Gordon*, 292 Ga. 474, 749 S.E.2d 368 (2013) (quoting *Deljoo v.*

rights under § 544(a)(3) are not subject to anyone's actual notice of an unrecorded interest, determination of the issues here involves only constructive and inquiry notice. A bankruptcy trustee cannot avoid an unrecorded interest in real estate if the unrecorded interest is nevertheless effective under state law principles of constructive[24] or inquiry[25] notice.

Under Georgia law, "[a] purchaser of land is charged with constructive notice of the contents of a recorded instrument within its chain of title." *Virginia Highland Civic Ass'n, Inc. v. Paces Properties, Inc.*, 250 Ga.App. 72, 74, 550 S.E.2d 128 (2001). When a deed is recorded, the recordation not only is constructive notice of the recorded deed, but also is notice of all other deeds referenced by the recorded deed and their contents. *E.g., Commodity Credit Corp. v. Wells*, 188 Ga. 287, 291, 3 S.E.2d 642, 644 (1939). A document recorded outside the chain of title, however, does not impart constructive notice. *Id.* (citing *Middle Georgia Realty, Inc. v. IDS Homes, Inc.*, 231 Ga. 57, 59, 200 S.E.2d 141, 143 (1973); *McCandless v. Yorkshire Guarantee & Securities Corp. Ltd.*, 101 Ga. 180, 28 S.E. 663 (1897)).

The chain of title for real property includes all recorded instruments that are executed by an entity holding a recorded interest in the property at the time of the execution of the instrument. *E.g., SunTrust Bank v. Equity Bank, S.S.B.*, 312 Ga.App. 644, 645, 719 S.E.2d 539, 540 (2011) (citing *VATACS Group, Inc. v. HomeSide Lending, Inc.*, 276 Ga.App. 386, 623 S.E.2d 534 (2005)).

The concept of inquiry notice "imputes knowledge of an earlier interest to a later purchaser of an interest in land whenever there is '[a]ny circumstance which would place a man of ordinary prudence fully upon his guard, and induce serious inquiry.'" *In re Hedrick*, 524 F.3d 1175, 1183 (11th Cir.2008) (applying Georgia law) (quoting *Page v. Will McKnight Constr., Inc.*, 282 Ga.App. 571, 639 S.E.2d 381 (2006)).

Georgia law also charges a purchaser with notice of any fact that would be found after such inquiry.[26] O.C.G.A. § 23–1–17 codifies this principle:[27]

Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found that such inquiry might have led. Ignorance of a fact due to negligence shall be equivalent to knowledge in fixing the rights of parties.

If the duty to inquire is triggered, a purchaser is deemed to have notice of everything that an inquiry would have uncovered. *E.g., Deljoo v. SunTrust Mortg., Inc.*, 284 Ga. 438, 439, 668 S.E.2d 245, 246 (2008). If a subsequent purchaser does not make an inquiry or explain why

SunTrust Mortg., Inc., 284 Ga. 438, 668 S.E.2d 245 (2008)).

24. *E.g., United States v. Smith (In re Hagendorfer)*, 803 F.2d 647, 649 (11th Cir.1986).

25. *E.g., In re Georgia Granite Co.*, 86 B.R. 733 (Bankr.N.D.Ga.1988).

26. *E.g., Deljoo v. SunTrust Mortg., Inc.*, 284 Ga. 438, 439, 668 S.E.2d 245 (2008) (quoting *Talmadge Bros. & Co. v. Interstate Bldg. & Loan Ass'n*, 105 Ga. 550, 554, 31 S.E. 618 (1898)) ("For more than a century, it has been recognized that a purchaser of land in this state 'is charged with notice of every fact shown by the records, and is presumed to know every other fact which an examination suggested by the records would have disclosed.'").

27. *See In re Hagler*, 429 B.R. 42, 53 (Bankr. N.D.Ga.2009), certified question answered, *sub nom., U.S. Bank, N.A. v. Gordon*, 289 Ga. 12, 709 S.E.2d 258 (2011).

the inquiry would have been futile, "it will be presumed that due inquiry would have disclosed the existent facts." *Henson v. Bridges*, 218 Ga. 6, 10, 126 S.E.2d 226, 228 (1962).

The Bond Trustee invokes these principles to support its contention that a hypothetical purchaser would have either constructive or inquiry notice of the mortgage lien from the Validation Order or from recordation of any of the Memorandum, the Lease, or the Fixture Filing. In Parts VI and VII, the Court explains why the Validation Order and the Memorandum, respectively, do not provide constructive or inquiry notice of the unrecorded interest. Parts VIII and IX, respectively, explain why the Lease and the Fixture Filing do.

### VI. NOTICE ARISING FROM THE VALIDATION ORDER

The Superior Court of Irwin County issued the Validation Order [28] that authorized Irwin County to incur the indebtedness in the transaction. The Superior Court entered the Validation Order upon the petition of the State of Georgia, and both appear in the civil litigation records of the Superior Court.

When pending litigation may affect title to real property, Georgia law permits the filing of a notice of lis pendens that provides constructive notice of the pending litigation. O.C.G.A. § 44–14–610. As the court stated in *Vance v. Lomas Mortg. USA, Inc.*, 263 Ga. 33, 35, 426 S.E.2d 873, 875 (1993), "Georgia has codified the doctrine so that in order for such constructive notice to be operative, a notice of lis pendens must be filed."

■ The Bond Trustee has cited no authority, and the Court has found none, for the proposition that a title examiner must investigate pleadings and orders in litigation in which the seller of property is a party. Accordingly, the Court concludes that the Validation Order does not give notice to a purchaser of the existence of the Indenture or any interest of the Bond Trustee in the Real Property as a matter of constructive or inquiry notice.

### VII. NOTICE ARISING FROM THE MEMORANDUM

■ The Irwin County real estate records include, in the Real Property's chain of title, a "Memorandum of Trust Indenture" (the "Memorandum").[29] The Memorandum specifically states that the Debtor has "granted, assigned, and pledged" the Real Property to the Bond Trustee under the Indenture and contains a full legal description of it. The Debtor did not sign the Memorandum. It is executed by an officer of the original Bond Trustee before a notary public but it lacks an unofficial witness.

■ The Memorandum cannot provide constructive notice of the existence of the mortgage and cannot give rise to inquiry notice because Georgia law does not permit its filing. A document that is not entitled to be recorded must be disregarded in its entirety. It cannot provide constructive notice or give rise to any duty of inquiry. *E.g., U.S. Bank N.A. v. Gordon*, 289 Ga. 12, 15, 709 S.E.2d 258 (2011) (unattested security deed or mortgage does not provide constructive notice).

Georgia statutes permit the recordation of various documents affecting title. These statutes include O.C.G.A. § 44–2–2(a)(1) (deeds, mortgages, liens of all kinds and maps or plats relating to real estate in the county); § 44–2–6 (bond for title, bond to reconvey realty, contract to sell or con-

---

**28.** Docket No. 30–9, page 50–57. *See supra,* note 10.

**29.** Docket No. 37–3. *See supra,* note 12.

vey realty or any interest therein); § 44-2-8 (options to purchase land or any interest in land and assignments of such options to purchase); § 44-2-9 (leases or usufructs of land or of any interest in land and assignments of such leases or usufructs); § 44-2-10 (absolute deeds and bills of sale to personalty); § 44-2-18 through 20 (affidavits); § 44-2-25 (decrees, deeds, mortgages, or other instruments affecting the title to land); and § 44-2-30 (notice of settlement). *See In re Codrington*, 430 B.R. 287, 288-89 (Bankr.N.D.Ga.2009), *aff'd*, 716 F.3d 1344 (11th Cir.2013) (listing types of documents that are recordable under Georgia law).

The Memorandum cannot qualify as a mortgage creating a lien because the Debtor did not sign it. It does not fall into any of the recognized categories of documents that may be recorded under the Georgia Code. Finally, the Memorandum is not properly attested. A recordable mortgage must be attested before an officer as prescribed for attestation and acknowledgement and one additional witness in the case of real property. O.C.G.A. § 44-14-33.

■■■ "A mortgage which is recorded ... without due attestation ... shall not be held to be notice to subsequent bona fide purchasers." O.C.G.A. § 44-14-39. It is ineffective to provide constructive notice to a purchaser and cannot provide the basis for inquiry notice, either. *E.g., U.S. Bank, N.A. v. Gordon*, 289 Ga. 12, 15, 709 S.E.2d 258 (2011).

## VIII. NOTICE ARISING FROM THE LEASE

The Lease between the Debtor and Irwin County is recorded in the Irwin County records. Its execution was properly attested, and it contains a full legal description of the Real Property.

The Lease refers to the Indenture 27 times, and Section 1.1 of the Lease incorporates the definitions of the terms in the Indenture. The Lease shows an assignment of rents to the Bond Trustee and gives Irwin County an option to purchase the Real Property.

The Bond Trustee asserts that the Lease provides constructive notice of its unrecorded mortgage lien in the Indenture or would trigger an inquiry that would lead to a purchaser's discovery of the Indenture and, consequently, its lien.

The Plaintiffs advance two reasons why the recordation of the Lease does not provide constructive notice or give rise to a duty of inquiry. First, they assert that the Lease is not in the chain of title because the clerk indexed the Debtor as the grantee in the grantee index and Irwin County as the grantor in the grantor index when, in fact, the Debtor is the grantor. Second, they contend that the Lease does not provide sufficient detail to provide constructive notice or give rise to a duty to inquire because it merely refers to the Indenture and does not specifically mention the existence of the unrecorded mortgage lien.

### A. Effect of Indexing Error

Georgia law permits recordation of a lease when the parties execute it with the same formality prescribed for the execution of a deed to land. O.C.G.A. § 44-2-9. The lease meets this requirement. The question is whether its erroneous indexing takes it out of the chain of title.

■■■ Under Georgia law, a clerk's recordation error is immaterial. Once the clerk accepts an instrument for recording that complies with all statutory requirements for recordation, it provides constructive notice to the world of its existence. *E.g., Leeds Bldg. Prods. v. Sears Mortg. Corp.*, 267 Ga. 300, 477 S.E.2d 565, 568 (1996). Because the clerk has the

duty to record the instrument properly, a recordation error does not affect the rights of the party who properly filed it. *E.g., Thomas v. Hudson,* 190 Ga. 622, 10 S.E.2d 396 (1940) (quoting *Willie v. Hines–Yelton Lumber Co.,* 167 Ga. 883, 146 S.E. 901 (1929)); *see* 2 PINDAR'S GEORGIA REAL ESTATE LAW AND PROCEDURE[30] § 19:135 (7th ed.) ("The rule in Georgia is that once a purchaser or lender properly files his deed with the clerk for record, he is not responsible for what the clerk does with it, whether he actually records it or not, and whether he properly indexes it or fails to do so.").

■ The Lease here was in recordable form and the Bond Trustee properly filed it. The Court concludes that the improper indexing did not place the Lease outside the chain of title.

## B. Whether the Lease Provides Constructive or Inquiry Notice

■ A recorded lease provides a third party with notice of "the interest of the parties to the lease ... in the property described in the instrument and of the interest of any person holding an assignment of any interest in such lease...." O.C.G.A. § 44-2-9. The recorded Lease, therefore, provides notice to a bona fide purchaser of the interests of the Debtor and the County, as parties to the Lease, as well as any assignment of their interests that the Lease reflects.

Although the Lease refers to the Bond Trustee in numerous places, it does not mention or describe the Bond Trustee's security interest by using the words "lien" or "pledge or assign" or otherwise specifically state that the Bond Trustee has a mortgage lien or other interest in the Real Property under the Indenture. The Lease does, however, list the Indenture as a "permitted encumbrance." [31]

The plaintiffs conclude that, in the absence of some specific description of a security interest in the Real Property, the provisions of the Lease do not give rise to a duty to inquire. In this regard, they correctly note that many cases dealing with inquiry notice involve a reference in a recorded instrument to an existing unrecorded deed to secure debt.[32] A reference to a deed to secure debt by definition provides notice of a prior security interest. This situation does not exist here, they continue, because the mere existence of a "trust indenture," without any indication that it includes the conveyance of a mortgage lien on the Real Property, does not raise any question about whether and to what extent it affects title to the property. In other words, they argue that the references in the Lease to "the Indenture" are too generic to provide notice of any interest or to create a duty to inquire about it.

But the question is not whether the Lease, standing alone, is sufficient to provide constructive notice of the unrecorded Indenture and the mortgage lien it creates.

---

30. Westlaw reference: GAREALEST § 19:135.

31. Lease at 36 [37–2 at 42].

32. Plaintiff Detention Management, LLC's Response to Defendant UMB, N.A.'s Statement of Undisputed Material Facts In Support of its Motion for Summary Judgment [Docket No. 54 at 14]. The cases include: *In re Hagendorfer,* 803 F.2d 647, 649 (11th Cir.1986); *Deljoo v. SunTrust Morg., Inc.,* 284 Ga. 438, 440, 668 S.E.2d 245, 247 (2008); *Harper v. Paradise,*

233 Ga. 194, 199, 210 S.E.2d 710, 713–14 (1974); *Baxter v. Bayview Loan Servicing, LLC,* 301 Ga.App. 577, 688 S.E.2d 363 (2009); *In re Rent–A–Tent, Inc.,* 468 B.R. 442, 457 (Bankr.N.D.Ga.2012); *In re Hagler,* 429 B.R. 42 (Bankr.N.D.Ga.2009), certified question answered, *sub nom., U.S. Bank N.A. v. Gordon,* 289 Ga. 12, 709 S.E.2d 258 (2011); *In re Hugh,* No. 09–10164–WHD, 2009 WL 6499247, at *3 (Bankr.N.D.Ga.2009); *In re Updike,* 93 B.R. 795 (Bankr.M.D.Ga.1988).

Rather, the questions are whether the contents of the Lease give rise to a duty to inquire further and, if so, whether such inquiry would lead to discovery of the unrecorded lien.

The principle of inquiry notice under Georgia law charges a purchaser of real property with knowledge of an earlier interest in the property when circumstances exist that would place a person or ordinary prudence "fully upon his guard." *In re Hedrick,* 524 F.3d 1175, 1183 (11th Cir. 2008) (applying Georgia law). Further, once this duty to inquire arises, Georgia law charges the purchaser with "notice of everything to which it is afterwards found such inquiry might have led." *Collins v. Freeman,* 226 Ga. 610, 610–11, 176 S.E.2d 704, 705 (1970). As O.C.G.A. § 23–1–17 states, "Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found that such inquiry might have led."

A hypothetical purchaser of the Real Property has constructive notice of the recorded Lease and its contents. A purchaser must examine it to determine its effect on the interest of the Debtor.

The essence of a lease of real estate is that the owner transfers its right to possession to the lessee in exchange for payment of rent. How long the owner will not have possession and how much rent it will receive are critical to the economic value of the real estate. An assignment of the right to receive rent will obviously affect the rent the owner receives.

Section 11.1 of the Lease[33] permits an assignment to the Trustee, which is the Bond Trustee.[34] The assignment is effective against the County only upon written notice to the County.[35] In section 14.10 of the Lease, the County acknowledges that the Debtor "has assigned all of its rights and remedies hereunder to the Trustee...."[36]

The Lease thus shows the existence of an assignment of the Debtor's interest in rents. This assignment raises the question of the extent, if any, to which the Debtor will receive rent under the assignment. Surely a prudent purchaser does not purchase real estate subject to a lease without knowing what rent it will receive.

Importantly, the Lease gives the County an option to purchase the Debtor's interest in the Project, which includes the Real Property, on or after August 1, 2017. If the purchase does not occur before August 1, 2037, the County has the right to direct the Bond Trustee and the Debtor to convey title to the property, conditioned on payment in full of the bonds and all obligations under the Lease. Determination of the purchase price upon exercise of the option requires review of the Indenture. A prudent purchaser will not buy real estate subject to a purchase option without knowing the terms of the option and what the owner will receive if it is exercised.

Examination of the Lease, therefore, raises two critical questions to which a prudent purchaser must have answers: what rent will a purchaser receive and how much will a purchaser receive if the lessee exercises the purchase option? The purchaser cannot answer either question unless it reads the Indenture to which the Lease repeatedly refers.

 Simply put, it is not possible to determine the Debtor's interest in the Real Property, as the Lease affects it, without reference to the Indenture. The

33. Lease at 25 [37–2 at 30].

34. Lease at 6 [37–2 at 11].

35. Lease § 11.1 at 25 [37–2 at 30].

36. Lease § 14.10 at 30 [37–2 at 35].

two documents are inextricably intertwined[37] with regard to both payments and the purchase option. An ordinarily prudent purchaser could not and would not purchase the Real Property without a full understanding of the provisions of the Indenture.

Because a purchaser cannot understand the effect of the Lease on the Debtor's interest in the Real Property without resort to the Indenture, the purchaser has a duty to review the Indenture. A review of the Indenture would lead to discovery of the fact that, in that document, the Debtor pledged and assigned its interest in the Real Property and thereby effectively granted the Bond Trustee a mortgage lien.

In sum, a lease of real property clearly affects its marketability, particularly when it shows an assignment of rents and includes a purchase option. The Lease is in the chain of title and provides constructive notice of its contents. The Lease itself does not refer to the existence of a mortgage lien. But its terms and its reference to the Indenture in sections that delineate the rights of the parties as well as the County's right to acquire the Real Property would place a person of ordinary prudence fully on guard and should excite a purchaser's attention enough to require it to review the Indenture in order to under-

stand the Debtor's rights in the Real Property that the purchaser is acquiring.

 Under principles of inquiry notice applicable under Georgia law, therefore, a purchaser of the Real Property would be charged with notice of the Bond Trustee's mortgage lien that the unrecorded Bond Trustee created and would acquire the Real Property subject to it. Because the mortgage lien is enforceable against a bona fide purchaser under Georgia law, it is not avoidable under 11 U.S.C. § 544(a)(3).

## IX. NOTICE ARISING FROM FIXTURE FILING

The Bond Trustee recorded a UCC financing statement with regard to fixtures (the "Fixture Filing") in the real estate records of Irwin County.[38] The initial issues are whether it is in the chain of title and whether the Bond Trustee had authority to file it. If the answer to both questions is affirmative, then the question is whether the Fixture Filing provides constructive notice or gives rise to inquiry notice with regard to the unrecorded mortgage in the Indenture. The Court examines each issue in turn.

### A. Whether the Fixture Filing is in the Chain of Title

Plaintiffs argue that the fixture filing is not signed by the Debtor and is thus not a

---

**37.** For example, under the Lease: The County cannot transfer, lease, assign, mortgage, or encumber the property except as provided under the lease, consistent with the terms of the Indenture. Lease at 7 [Docket 37–2 at 12]. The County's payments under the lease are to be made solely from the revenues in the "Certificate Fund held by the Trustee under the Indenture." Lease at 12 [Docket 37–2 at 17]. The County is entitled to credit against its rental payments at the time, and in the amounts, as set forth in and determined in accordance with the Indenture. *Id.* The County assigns all revenues from the leased Project to the Trustee pursuant to the lease

and the Indenture and the Trustee will maintain these revenues in a separate account pursuant to Section 4.02 of the Indenture. *Id.* During the term of the lease, the Trustee will transfer money from the revenues earned back to the County in the amounts and at the times required under Article IV of the Indenture. Lease at 13 [Docket No. 37–2 at 18]. The lease may be modified by written amendment of the Debtor and County in accordance with the provisions of the Indenture. Lease at 29 [Docket No. 37–2 at 34].

**38.** Docket No. 37–4. *See supra,* note 13.

muniment of title or deed within the Real Property's chain of title.

 A hypothetical bona fide purchaser for purposes of 11 U.S.C. § 544(a)(3) is deemed to have performed a title search. *In re Hedrick*, 524 F.3d 1175, 1181 (11th Cir.2008). "A purchaser of land is charged with constructive notice of the contents of a recorded instrument within its chain of title." *Mabra v. Deutsche Bank & Trust Co. Ams.*, 277 Ga.App. 764, 766, 627 S.E.2d 849, 851 (2006). Thus, if the Fixture Filing is in the chain of title, a bona fide purchaser would have constructive notice of the contents of the filing.

As Part IV notes, Georgia law provides for the recording of several types of instruments affecting title to real property. While not controlling, the Georgia Title Standards [39] published by the Real Property Section of the State Bar of Georgia are instructive in determining which instruments affecting the marketability of title to real property are uncovered by a title search.[40]

Section 16.6 of the Revised Georgia Title Standards states that marketability of title is adversely affected by a UCC fixture filing if it is filed in the real estate records affecting the real property. Section 16.6 of the Georgia Title Standards specifically notes that a title examiner is not required to examine title to personal property unless requested to do so by the client. As a recognized treatise on Georgia real estate law notes, however, "if a financing statement recorded in the realty mortgage's index perfects a security interest of a fixture, it should be reported by the examiner since it could be regarded as constructive notice which would impair the marketability of the title." [41]

The Fixture Filing was filed and indexed in the real property records of Irwin County, Georgia.[42] The Georgia Title Standards, therefore, require that a title examiner find the Fixture Filing and report it as an exception. Although the Debtor did not sign the Fixture Filing and it does not meet the attestation requirements for recordation of a mortgage or deed to secure debt under O.C.G.A. § 44–14–33, Georgia's version of the UCC does not require the borrower's signature or any attestation for recordation of a fixture filing. O.C.G.A. § 11–9–509.

 The Court concludes that an authorized fixture filing that is filed in the real property records of a county, under the debtor's name, is sufficiently within the chain of title to provide a purchaser with constructive notice of its contents.

## B. Authority of the Bond Trustee to File the Fixture Filing

 Under the Uniform Commercial Code, a secured party may file a financing

---

**39.** GEORGIA REAL ESTATE TITLE EXAM AND CLOSINGS WITH FORMS, Appendix A (2013 ed.) (Westlaw reference: GATITLCLOS APP A).

**40.** The preface to the Georgia Title Standards note "A title standard is a statement officially approved by a bar association, which declares the answer to a question of a solution for a problem involved in the process of title examination. It is *not* a law, but gains its effect from voluntary compliance by attorneys."
21 Georgia courts have referred to the title standards in determining whether a purchaser has notice of an interest in real estate. *See,*

*e.g., Gallagher v. The Buckhead Community Bank*, 299 Ga.App. 622, 627, 683 S.E.2d 50, 54 (2009); *Marietta Recovery Group, Inc. v. Financial Properties Developers, Inc.*, 256 Ga. 238, 347 S.E.2d 596, 597 (1986); *Pease & Elliman Realty Trust v. Gaines*, 160 Ga.App. 125, 131 n. 1, 286 S.E.2d 448, 454 (1981).

**41.** 2 PINDAR'S GEORGIA REAL ESTATE LAW AND PROCEDURE § 10:2 (7th ed.) (Westlaw reference: GAREALEST § 10:2).

**42.** *Id.;*

statement if the Debtor grants it a security interest in the collateral.[43] The Plaintiffs argue that the Bond Trustee did not have authority to file the Fixture Filing because the Indenture did not specifically grant a security interest in fixtures.

■ Authorization from the borrower is not a requirement for the secured party's filing of a financing statement if the borrower has granted a security interest in the collateral to the creditor. O.C.G.A. § 11–9–509(b)(1) authorizes a secured party to file an initial financing statement for any collateral described in a security agreement.[44] The conveyance of an interest in real estate under Georgia law includes the conveyance of any fixtures.[45] Thus, because the Indenture created a mortgage lien on "the Debtor's interest in the real estate," it also created a lien on the fixtures. With a security interest in the fixtures, the Bond Trustee had authority to file the Fixture Filing.

## C. Constructive and Inquiry Notice From the Fixture Filing

Because the Fixture Filing was within the chain of title and authorized, the Court considers what notice the filing provides to a subsequent purchaser of the Real Property.

The Fixture Filing contains the following language:

[The Debtor] assigns and pledges to [The Bond Trustee], under that certain Indenture, dated as of August 1, 2007, between the Debtor and the Trustee (the "Indenture"), its successors in the trust and its assigns forever, to the extent provided for in the Indenture:

The Debtor's interest in the real estate located in Irwin County, Georgia, the same being more particularly described in Exhibit A attached hereto and made a part hereof.

Exhibit A of the Fixture Filing contains a legal description of the Real Property.

A UCC fixture filing generally provides notice only of the secured party's interest in fixtures on real property. The quoted language, however, also states that the Bond Trustee has a security interest in the Real Property to the extent set forth in the Indenture.

As Part V discusses, a purchaser has constructive notice of the contents of any document in the chain of title. A title examiner, therefore, would find from the Fixture Filing that the Bond Trustee claimed a security interest in the real estate itself, not just fixtures, under the terms of the Indenture. The question is whether these circumstances would give rise to inquiry notice.

The standard for inquiry notice is whether circumstances exist that would excite a purchaser's attention enough to require further inquiry. O.C.G.A. § 23–1–17. The Court concludes that a title examiner who finds a reference in a document in the chain of title to a pledge and assign-

---

43. Under Georgia law, a UCC financing statement is effective only "the extent that it was filed by a person that may file it under Code Section 11–9–509." O.C.G.A. § 11–9–510. O.C.G.A. § 11–9–509(b), in turn, provides that "[b]y authenticating or becoming bound as debtor by a security agreement, a debtor or new debtor authorizes the filing of an initial financing statement...."

44. The UCC comments to this section additionally note that "the authentication of a security agreement ipso facto constitutes the debtor's authorization of the filing of a financing statement covering the collateral described in the security agreement. The secured party need not obtain a separate authorization."

45. *See Hargrove v. Jenkins*, 192 Ga.App. 83, 84, 383 S.E.2d 636, 638 (1989).

ment of real estate under an unrecorded document cannot ignore the reference. Such a discovery should cause an examiner to find and review it. Such further inquiry would, of course, result in the discovery of the Bond Trustee's mortgage lien in the Indenture.

Plaintiffs cite *In re Hagler*, 429 B.R. 42 (Bankr.N.D.Ga.2009), certified question answered, *sub nom., U.S. Bank N.A. v. Gordon*, 289 Ga. 12, 709 S.E.2d 258 (2011), to support the proposition that the Fixture Filing does not provide sufficient notice of the existence of the Bond Trustee's unrecorded mortgage interest. *Hagler* involved an unrecorded first priority security deed and a recorded second priority security deed. The second security deed was on a printed form that stated it was a "second mortgage." The holder of the first security deed argued that a title examiner should have made inquiry about the existence of an unrecorded first security deed because the execution of a document described as a "second mortgage" meant that an unrecorded first priority interest must exist.

The *Hagler* court rejected this argument because the second security deed did not refer to a specific security deed. The court reasoned that the second security deed would be junior only if a senior security deed existed but that the name of the second security deed did not mean that a senior deed in fact existed. *Id.* at 54. The *Hagler* court concluded that a generic "second mortgage" reference in a recorded deed was too general to constitute a "key" to the senior unrecorded lien. Thus, the court stated, "A person of ordinary prudence would not infer that the name of a printed form was meant to convey more information than what the deed itself states." *Id.* at 54.

The plaintiffs also rely on *Wells Fargo Bank, N.A. v. Gordon*, 292 Ga. 474, 749 S.E.2d 368 (2013). There, the borrower executed a security deed and a waiver of certain rights. The security deed lacked proper attestation, but the waiver was properly attested. After concluding that the attestation of the waiver could not be substituted for proper attestation of the security deed, as the security deed was not entitled to recordation and could not provide constructive notice, 292 Ga. at 477, 749 S.E.2d 368, the Supreme Court considered whether the fully attested waiver was sufficient to provide a basis for inquiry notice.

The waiver in *Wells Fargo Bank* identified the lender and borrowers but made only a generic reference to a security deed and did not identify the property that the referenced security deed encumbered. 292 Ga. at 477–78, 749 S.E.2d 368. The court concluded, "In the total absence of identification or description of the property subject to the security deed, the waiver itself would not place a bona fide purchaser on notice that he should make further inquiry." 292 Ga. at 478, 749 S.E.2d 368.

In contrast to the documents in *Hagler* and *Wells Fargo Bank*, the Fixture Filing here specifically described the Indenture as the document that created the interest in the Real Property, identified the parties to it, expressly stated that the Debtor "assign[ed] and pledge[d]" its interest in the Real Property to the Bond Trustee, and included a complete legal description of the Real Property.

The circumstances here are like those in *Updike v. First Federal Savings and Loan Association of Columbus (In re Updike)*, 93 B.R. 795 (Bankr.M.D.Ga.1988). In *Updike*, a duly recorded deed referred to a specific prior unrecorded deed. The *Updike* court ruled that the reference was sufficient to put a purchaser on notice of the unrecorded interest. *Id.* at 798.

The Court concludes that, under Georgia law, the Fixture Filing contained sufficient information to put a purchaser on notice of the existence of the Bond Trustee's prior unrecorded interest in the Real Property under the Indenture. The references in the Fixture Filing to the assignment and pledge of the Debtor's interest should excite the attention of a purchaser and trigger the duty to inquire further into the interest held by the Bond Trustee. That inquiry would include an examination of the Indenture that would give the purchaser notice of the Bond Trustee's mortgage. Accordingly, the mortgage lien is enforceable against a bona fide purchaser, and the mortgage lien is not avoidable under 11 U.S.C. § 544(a)(3).

## X. Conclusion

Based on the foregoing, the Court concludes that the Bond Trustee has a mortgage lien on the Real Property and that the mortgage lien is enforceable against a hypothetical purchaser of the Real Property on the date that the Debtor filed its Chapter 11 case. Consequently, the mortgage lien is not avoidable on the Real Property under 11 U.S.C. § 544(a)(3).

It is, therefore, hereby **ORDERED** that the Bond Trustee's Motion for Summary Judgment [Docket No. 30] be, and it hereby is, **GRANTED** and that the plaintiffs' Motions for Summary Judgment [Docket Nos. 32 and 37] be, and they hereby are, **DENIED.**

It is further **ORDERED** that the Debtor's Motion to Strike [Docket No. 51] be, and the same hereby is, dismissed, without prejudice, as moot.

IT IS ORDERED as set forth below: